Slip Op. 17-88

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| XYZ CORPORATION, | |
|       **Plaintiff,** | |
| v. | Before: Jennifer Choe-Groves, Judge |
| UNITED STATES and U.S. CUSTOMS & BORDER PROTECTION, | Court No. 17-00125 |
|       **Defendants,** | PUBLIC VERSION |
| and | |
| DURACELL U.S. OPERATIONS, INC., | |
|       **Defendant-Intervenor.** | |

## OPINION AND ORDER

[Denying Defendant's motion to dismiss for lack of jurisdiction and Plaintiff's application for a preliminary injunction.]

Dated: July 17, 2017

John M. Peterson, Russell A. Semmel, and Richard F. O'Neill, Neville Peterson LLP, of New York, NY, for Plaintiff XYZ Corporation.

Alexander J. Vanderweide, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for Defendant the United States.  With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.  Of counsel on the brief was Beth C. Brotman, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, New York, NY.

      Choe-Groves, Judge:  This case involves the "Lever-Rule" restriction on imports of gray

market goods, which are products bearing genuine trademarks identical to or substantially

indistinguishable from those trademarks appearing on articles authorized by the United States

trademark owner for importation or sale in the United States, that may create a likelihood of

consumer confusion when the gray market goods and those bearing the authorized trademark are

physically and materially different.

XYZ Corporation ("Plaintiff")[1] is a company engaged in the business of importing and

distributing bulk-packaged gray market batteries bearing the "DURACELL" mark, a United

States trademark currently owned by Duracell U.S. Operations, Inc. ("Duracell U.S."). See

Compl. ¶ 6, May 19, 2017, ECF No. 2. Plaintiff brings this action seeking declaratory and

injunctive relief from the decision of U.S. Customs and Border Protection ("Customs") to grant

Lever-Rule protection to Duracell U.S., thereby restricting imports of gray market batteries

bearing its trademark. See Summons, May 19, 2017, ECF No. 1; Compl.; see also U.S. Customs

and Border Protection Grant of "Lever-Rule" Protection, 51 Cust. Bull. & Dec. No. 12 at 1 (Mar.

22, 2017). Plaintiff asserts that the grant of Lever-Rule protection was (1) null and void because

Customs failed to observe notice and comment rulemaking requirements of the Administrative

Procedure Act ("APA"), and (2) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with the law because Customs restricted the importation of merchandise that is not

materially and physically different from batteries authorized by Duracell U.S. for importation or

sale in the United States. See Compl. ¶¶ 31–54.

Before the court are two motions. First, Plaintiff requests the issuance of a preliminary

injunction to enjoin Customs from enforcing the Lever-Rule restrictions against Plaintiff's goods

---

[1] Plaintiff has assumed the fictitious name of XYZ Corporation for purposes of this litigation because Plaintiff fears that it would be subject to commercial retaliation as a result of filing this action if its company name is revealed. See Compl. ¶ 1 n.1. Plaintiff's true name is [[
    ]]. See Confidential Summons, June 1, 2017, ECF No. 26.

during the pendency of this action.  See Pl.'s Appl. Prelim. Inj., May 19, 2017, ECF No. 6 ("Pl.'s Appl. Prelim. Inj."); Pl.'s Mem. P. & A. Supp. Appl. Prelim. Inj., May 19, 2017, ECF No. 7 ("Pl.'s Mem. Supp. Appl. Prelim. Inj.").  Plaintiff asserts that it is entitled to injunctive relief because it has shown that it will be immediately and irreparably injured if the status quo is not preserved throughout this action, there is a likelihood of success on the merits, granting the request is in the public's interest, and the balance of hardship favors Plaintiff.  See Pl.'s Mem. Supp. Appl. Prelim. Inj. 11–24.  The United States and Customs (collectively, "Defendant") argue that Plaintiff's application for a preliminary injunction must be denied because Plaintiff has failed to demonstrate that it is entitled to injunctive relief.  See Defs.' Mem. Supp. Mot. Dismiss and Resp. Opp'n Pl.'s Appl. for Prelim. Inj. 22–31, June 7, 2017, ECF No. 33 ("Defs.' Mot. Dismiss and Resp. Pl.'s Appl. Prelim. Inj.").

Second, Defendant moves pursuant to USCIT Rule 12(b)(1) to dismiss this action for lack of jurisdiction, arguing that this action does not fall within any of the Court's specific grants of jurisdiction under 28 U.S.C. § 1581 (2012).[2]  See Defs.' Mot. Dismiss and Resp. Pl.'s Appl. Prelim. Inj. 6–21.  Plaintiff opposes Defendant's motion and asserts that the court possesses jurisdiction.  See Pl.'s Mem. Opp'n Defs' Mot. Dismiss 4–13, June 12, 2017, ECF No. 36 ("Pl.'s Resp. Defs.' Mot. Dismiss").

For the reasons set forth below, the court denies both Defendant's motion to dismiss for lack of jurisdiction and Plaintiff's application for a preliminary injunction.

---

[2] All further citations to Titles 5, 15, and 28 of the U.S. Code are to the 2012 edition.

## BACKGROUND

Generally, the law prohibits the importation of goods that infringe upon the rights of

United States trademark owners.  See, e.g., 15 U.S.C. § 1124;[3] Section 526 of the Tariff Act of

1930, as amended, 19 U.S.C. § 1526.[4]  Merchandise imported into the United States in violation

of the trademark laws shall be subject to enforcement for violation of the customs laws.  19

U.S.C. § 1526(b).  Customs has promulgated regulations to restrict the importation of certain

gray market goods.[5]  See 19 C.F.R. § 133.23 (2012).[6]  Under the Lever-Rule,[7] United States

trademark owners have the ability to submit an application to Customs requesting restrictions on

imports of gray market goods bearing a genuine trademark that are physically and materially

---

[3] Section 42 of the Lanham Act forbids the importation and entry of merchandise that copies or simulates a United States trademark in a manner that induces the public to believe that the article is manufactured in a country other than the country in which the merchandise is in fact manufactured.  See 15 U.S.C. § 1124.

[4] Section 526 of the Tariff Act of 1930 provides that it is unlawful to import into the United States any foreign-produced merchandise that bears a registered trademark owned by a United States citizen or company and that imports of any such merchandise shall be subject to seizure and forfeiture.  See 19 U.S.C. § 1526.  All further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the U.S. Code.

[5] Customs defines restricted gray market goods as "foreign-made articles bearing a genuine trademark or trade name identical with or substantially indistinguishable from one owned and recorded by a citizen of the United States or a corporation or association created or organized within the United States and imported without the authorization of the U.S. owner."  19 C.F.R. § 133.23(a).

[6] All further citations to Title 19 of the Code of Federal Regulations are to the 2012 edition.

[7] The Lever-Rule derives its name from the Court of Appeals for the District of Columbia Circuit's decision in Lever Bros. Co. v. United States, which clarified that 15 U.S.C. § 1124 bars the importation of gray market goods that are physically and materially different from the goods authorized for importation or sale in the United States, regardless of the trademark's genuine character abroad or affiliation between the producers.  See 981 F.2d 1330, 1333–39 (D.C. Cir. 1993).  Customs amended its regulation restricting imports of gray market goods and created the Lever-Rule to comply with the decision in Lever Bros. Co.  See Gray Market Imports and Other Trademarked Goods, 64 Fed. Reg. 9,058 (Dep't Treasury Feb. 24, 1999).

different from the articles authorized by the United States trademark owner for importation or

sale in the United States.  See 19 C.F.R. §§ 133.2(e) (providing trademark owners with the

ability to apply for Lever-Rule protection), 133.23(a)(3) (describing the goods that are restricted

under the Lever-Rule).  If Customs grants Lever-Rule protection to the trademark owner, the

gray market goods shall be denied entry into the United States, detained for a minimum period of

thirty days, and potentially subject to seizure and forfeiture proceedings.  See 19 C.F.R.

§ 133.23(c)–(f).

On January 25, 2017, Customs issued a notice in the U.S. Customs Bulletin and

Decisions publication that it received an application from Duracell U.S. seeking Lever-Rule

protection "against importations of OEM bulk packaged batteries and foreign retail packaged

batteries, intended for sale in countries outside the United States that bear the 'DURACELL'

mark."  See U.S. Customs and Border Protection Receipt of Application for "Lever-Rule"

Protection, 51 Cust. Bull. & Dec. No. 4 at 1 (Jan. 25, 2017).  The application submitted by

Duracell U.S. was not publicly available and Customs did not seek input from the public.

Customs announced on March 22, 2017 that it granted Duracell U.S. Lever-Rule protection

because the subject "gray market Duracell battery products differ physically and materially from

the Duracell battery products authorized for sale in the United States with respect to the

following product characteristics: label warnings, consumer assistance information, product

guarantees, and warranty coverage."  See U.S. Customs and Border Protection Grant of "Lever-

Rule" Protection, 51 Cust. Bull. & Dec. No. 12 at 1 (Mar. 22, 2017).  Customs declared that the

importation of such batteries was restricted and subject to seizure and forfeiture, unless certain labeling requirements have been satisfied.[8]  See id.

Thereafter, counsel for Plaintiff sent a letter to Customs requesting that it reconsider its grant of Lever-Rule protection to Duracell U.S.  See Compl. Ex. C, May 19, 2017, ECF No. 3. The letter asserted that decisions granting Lever-Rule protection are the type of rules that must follow notice and comment rulemaking procedures as required by the APA.  See id.  The letter also claimed that Duracell U.S. was not entitled to Lever-Rule protection against bulk OEM batteries because these gray market products are not physically and materially different from batteries that are sold by Duracell U.S.  See id.  Counsel for Plaintiff requested that Customs withdraw its determination and solicit public comments regarding whether any Lever-rule protection should be granted with respect to these gray market battery products.  See id.  Plaintiff alleges that Customs reviewed the letter and declined to reconsider its decision to grant Lever-Rule protection to Duracell U.S.  See Compl. ¶ 29.

Plaintiff commenced this action on May 19, 2017 invoking jurisdiction under 28 U.S.C. § 1581(i) to obtain judicial review of Customs' decision to grant Duracell U.S. Lever-Rule protection.  See Summons.  On the same day, Plaintiff filed an application for a preliminary injunction seeking to enjoin Customs from enforcing the Lever-Rule restrictions against

---

[8] Gray market products determined to be physically and materially different from those products authorized for importation and sale in the United States are permitted entry if "the merchandise or its packaging bears a conspicuous and legible label designed to remain on the product until the first point of sale to a retail consumer in the United States stating that: 'This product is not a product authorized by the United States trademark owner for importation and is physically and materially different from the authorized product.'"  19 C.F.R. § 133.23(b).

Plaintiff's imports of gray market Duracell batteries.[9]  See Pl.'s Appl. Prelim. Inj.  Plaintiff

submitted an affidavit from the president of XYZ Corporation to support its claim for injunctive

relief.  See Confidential Affirmation of John Doe, June 1, 2017, ECF No. 30 ("John Doe

Affidavit").

　　　　Defendant filed a response objecting to the issuance of a preliminary injunction and

moving to dismiss Plaintiff's action for lack of jurisdiction on June 7, 2017.  See Defs.' Mot.

Dismiss and Resp. Pl.'s Appl. Prelim. Inj.  Defendant argues that this action must be dismissed

because there is no basis for jurisdiction under 28 U.S.C. § 1581, Plaintiff does not have standing

to bring this action, and the issues raised by Plaintiff are not ripe for judicial review.  See Defs.'

Mot. Dismiss and Resp. Pl.'s Appl. Prelim. Inj. 6–22.  Defendant asserts that even if the court

has jurisdiction over this action, Plaintiff has not established the necessary factors required to

grant a preliminary injunction.  See Defs.' Mot. and Resp. Pl.'s Appl. Prelim. Inj. 22–31.

Plaintiff filed its response to Defendant's motion to dismiss on June 12, 2017, refuting

Defendant's standing and ripeness arguments and maintaining that the court has jurisdiction

pursuant to 28 U.S.C. § 1581(i)(4) because the action arises out of laws relating to the

---

[9] While Plaintiff's application for a preliminary injunction was pending before the court, Plaintiff filed an application for a temporary restraining order.  See Pl.'s Appl. TRO, May 26, 2017, ECF No. 23; see also Def.'s Resp. Opp'n Pl.'s Appl. TRO, May 30, 2017, ECF No. 25.  The court granted Plaintiff's application for a temporary restraining order on June 1, 2017 and scheduled a hearing on Plaintiff's application for a preliminary injunction.  See Order Granting Mot. TRO, June 1, 2017, ECF No. 32.  On three separate occasions, the court extended the temporary restraining order at Plaintiff's request.  See Temporary Restraining Order Extension, June 15, 2017, ECF No. 39; Second Temporary Restraining Order Extension, June 26, 2017, ECF No. 52; Amendment to Second Temporary Restraining Order Extension, June 27, 2017, ECF No. 54; Third Temporary Restraining Order, July 10, 2017, ECF No. 60.

administration and enforcement of the exclusion of merchandise.[10]  See Pl.'s Resp. Defs.' Mot.

Dismiss 4–13.

The court held a hearing with the Parties on June 14, 2017 regarding the two motions

before the court.  See Confidential Hearing, June 14, 2016, ECF No. 38.  During the hearing, the

president of XYZ Corporation testified under direct- and cross-examination in support of

Plaintiff's application for a preliminary injunction.  See id.  Plaintiff also submitted the following

three exhibits into evidence at the hearing: (1) one box of Plaintiff's Duracell bulk batteries, (2)

one box of Duracell U.S.'s bulk batteries, and (3) a notification from Customs indicating that

Plaintiff's shipments of Duracell batteries have been held by Customs, ostensibly due to Lever-

Rule restrictions.[11]  See Physical Exs., June 14, 2017, ECF No. 56; Confidential Ex. 3, June 14,

2017, ECF No. 57.  Defendant filed its reply to the motion to dismiss for lack of jurisdiction on

June 15, 2017.  See Defs.' Reply Pl.'s Resp. Defs.' Mot. Dismiss Lack Jurisdiction, June 15,

2017, ECF No. 40.

---

[10] Plaintiff has abandoned its argument that 28 U.S.C. § 1581(i)(3) serves as an alternative
jurisdictional basis for this action.  See Pl.'s Resp. Defs.' Mot. Dismiss 11 n.3; see also Compl.
¶ 5.

[11] The temporary restraining order in this action was issued on June 1, 2017, restraining Customs
from enforcing Lever-Rule restrictions against Plaintiff's shipments of battery products bearing
the "DURACELL" trademark, whether by excluding from entry, seizing goods, or demanding
the redelivery of conditionally released goods, effective upon the payment of security.  See
Temporary Restraining Order, June 1, 2017, ECF No. 32.  The court notes that Customs was free
to hold and detain Plaintiff's shipments for reasons other than enforcement of Lever-Rule
restrictions.  Customs issued a notice on June 9, 2017 indicating that Plaintiff's shipments of
Duracell batteries had been held.  See Confidential Ex. 3, June 14, 2017, ECF No. 57.  Defendant
represented that Plaintiff's shipments would be released after Plaintiff posted the security
required by the temporary restraining order.  See Confidential Hearing at 1:36:30–1:38:44; In-
Person Status Conference at 0:14:41–0:15:25, June 20, 2017, ECF No. 47.

In a letter dated June 27, 2017, the court requested the Parties to submit supplemental briefs addressing whether 28 U.S.C. § 1581(h) provides the court with jurisdiction.  Plaintiff filed its supplemental brief on June 30, 2017, explaining that § 1581(h) would serve as a basis for jurisdiction if the court determines that Customs' decision to impose Lever-Rule restrictions on gray market Duracell batteries is the type of ruling reviewable under § 1581(h).  See Pl.'s Suppl. Mem. Opp'n Defs.' Mot. Dismiss 10, June 30, 2017, ECF No. 55.  Plaintiff also maintained its position that 28 U.S.C. § 1581(i)(4) provides the court with jurisdiction.  See id. at 3–9.  Defendant responded to Plaintiff's submission on July 6, 2017.  See Def.'s Suppl. Resp. Br. Addressing 28 U.S.C. § 1581(h), July 6, 2017, ECF No. 58 ("Defs.' Suppl. Resp. Br.").

## DISCUSSION

The Court must possess jurisdiction over an action as a precondition to granting injunctive relief.  See Henry v. Polish Am., Inc., 57 F.3d 1085 (Fed. Cir. 1995); Int'l Custom Prods., Inc. v. United States, 32 CIT 465, 466 (2008) (citing Am. Air Parcel Forwarding Co. v. United States, 6 CIT 147, 150, 573 F. Supp. 117, 120 (1983)).  The court will first address Defendant's motion to dismiss for lack of jurisdiction before addressing Plaintiff's application for a preliminary injunction.

### I.    Defendant's Motion to Dismiss

#### A.  Jurisdiction

Plaintiff filed this action seeking declaratory and injunctive relief with respect to Customs' decision to grant Lever-Rule protection to Duracell U.S., which resulted in restrictions on the importation of gray market Duracell battery products.  This action does not concern Customs' application of the Lever-Rule restrictions to specific entries of merchandise.  Rather,

Plaintiff's claims are APA challenges concerning the validity of the Lever-Rule restrictions on gray market Duracell batteries.  <u>See</u> Compl. ¶¶ 31 –54.  Plaintiff claims that Customs' decision to grant Duracell U.S. Lever-Rule protection was unlawful and must be set aside because Customs failed to follow notice and comment rulemaking requirements of the APA.[12]  <u>See id.</u> ¶¶ 31–41; <u>see also</u> 5 U.S.C. § 553 (requiring agencies to notify the public and provide an opportunity for comment prior to issuing a rule); 5 U.S.C. § 706(2)(D) (providing that a reviewing court shall set aside agency action performed "without observance of procedure required by law").  Plaintiff also claims that Customs' decision must be held unlawful because it was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.  <u>See</u> Compl. ¶¶ 42–54; <u>see also</u> 5 U.S.C. § 706(2)(A).  "[T]he APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions."  <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977); <u>see also</u> <u>Am. Air Parcel Forwarding Co. v. United States</u>, 718 F.2d 1546, 1552 (Fed. Cir. 1983) (providing that the APA "does not give an independent basis for finding jurisdiction in the Court of International Trade.").  The Court must have its own independent statutory basis for jurisdiction in order for Plaintiff's action to proceed.  <u>See</u> <u>Shinyei Corp. of Am. v. United States</u>, 355 F.3d 1297, 1304 (Fed. Cir. 2004).

---

[12] According to the APA, an agency is required to notify the public of proposed rulemaking and provide the public with an opportunity to comment as part of the process for formulating a rule. <u>See</u> 5 U.S.C. § 553.  A rule is defined by statute in relevant part as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret or prescribe law or policy."  5 U.S.C. § 551(4).  Plaintiff argues that the grant of the Lever-Rule protection constituted the type of rulemaking that required Customs to follow notice and comment procedures.  <u>See</u> Pl.'s Mem. Supp. Appl. Prelim. Inj. 12–13.

Defendant contends that this action does not fall within any of the specific grants of

jurisdiction under 28 U.S.C. § 1581.  See Defs.' Mot. Dismiss and Resp. Pl.'s Appl. Prelim. Inj.

17–21; Defs.' Suppl. Resp. Br. 1–9.  Plaintiff argues that the court has authority to review

Customs' grant of Lever-Rule protection pursuant to 28 U.S.C. § 1581(i)(4).  See Pl.'s Resp.

Defs.' Mot. Dismiss 11–13.  Plaintiff asserts that 28 U.S.C. § 1581(i)(4) vests the court with

jurisdiction because this action relates to Customs' administration and enforcement of Lever-

Rule restrictions and the exclusion of merchandise, which is a matter embraced within 28 U.S.C.

§ 1581(a) according to Plaintiff.  See Compl. ¶ 4; Pl.'s Resp. Defs.' Mot. Dismiss 11–13.

Plaintiff also argues that 28 U.S.C. § 1581(h) can serve as a basis for the court's jurisdiction.[13]

See Pl.'s Suppl. Mem. Opp'n Defs.' Mot. Dismiss 10.

The U.S. Court of International Trade, like all federal courts, is one of limited jurisdiction

and is "presumed to be 'without jurisdiction' unless 'the contrary appears affirmatively from the

record.'"  DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006)

(quoting King Iron Bridge & Mfg. Co. v. Otoe Cty., 120 U.S. 225, 226 (1887)).  The party

invoking jurisdiction must "allege sufficient facts to establish the court's jurisdiction," id. (citing

McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)), and therefore

---

[13] Defendant argues that Plaintiff's "failure to plead 28 U.S.C. § 1581(h) as a possible
jurisdictional ground now precludes this Court from taking jurisdiction under section 1581(h)."
Defs.' Suppl. Resp. Br. 2 (citing Autoalliance Int'l, Inc. v. United States, 29 CIT 1082, 1091–92,
398 F. Supp. 2d 1326, 1334 (2005)).  As explained later in this opinion, the court finds that
jurisdiction under 28 U.S.C. § 1581(h) exists.  The court notes that the existence of jurisdiction
does not absolve Plaintiff from satisfying the requirement to plead the court's jurisdiction under
USCIT Rule 8(a).  The court is authorized, however, to permit a litigant to amend defective
allegations of jurisdiction.  See 28 U.S.C. § 1653.  Accordingly, the court instructs Plaintiff to
amend its jurisdictional allegations in accordance with this opinion.

"bears the burden of establishing it."  Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347,

1355 (Fed. Cir. 2006).  The court must draw all reasonable inferences in favor of the non-movant

when deciding a motion to dismiss for lack of jurisdiction.  See Henke v. United States, 60 F.3d

795, 797 (Fed. Cir. 1995).

The Court is empowered to hear civil actions brought against the United States pursuant

to the specific grants of jurisdiction enumerated under 28 U.S.C. § 1581(a)–(i).  Plaintiff asserts

that 28 U.S.C. § 1581(h) and (i)(4) confer jurisdiction in this action.  See See Pl.'s Resp. Defs.'

Mot. Dismiss 11–13; Pl.'s Suppl. Mem. Opp'n Defs.' Mot. Dismiss 3–10.  The court notes that

§ 1581(i) provides for the Court's residual jurisdiction[14] and may not be invoked "when

jurisdiction under another subsection of § 1581 is or could have been available."  Ford Motor Co.

v. United States, 688 F.3d 1319, 1323 (Fed. Cir. 2012) (quoting Miller & Co. v. United States,

824 F.2d 961, 963 (Fed. Cir. 1987)).  Thus, the court must determine first whether 28 U.S.C.

§ 1581(h) provides the court with jurisdiction prior to determining the viability of exercising

jurisdiction pursuant to the court's residual jurisdiction.

---

[14] Under 28 U.S.C. § 1581(i), the Court has exclusive jurisdiction over:

> any civil action commenced against the United States, its agencies, or its officers,
> that arises out of any law of the United States providing for--
>
> (1) revenue from imports or tonnage;
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for
>     reasons other than the raising of revenue;
> (3) embargoes or other quantitative restrictions on the importation of
>     merchandise for reasons other than the protection of the public health or
>     safety; or
> (4) administration and enforcement with respect to the matters referred to in
>     paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this
>     section.

28 U.S.C. § 1581(i).

An importer may seek review of a ruling prior to the importation of goods under 28

U.S.C. § 1581(h), which provides in relevant part that:

> The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, . . . relating to . . . restricted merchandise, . . . or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

28 U.S.C. § 1581(h).  This provision has been interpreted to set out four requirements to

establish jurisdiction: (1) judicial review must be sought prior to importation; (2) judicial review

must be sought of a ruling, a refusal to issue a ruling, or a refusal to change such a ruling; (3) the

ruling must relate to certain subject matter; and (4) the importer must demonstrate that

irreparable harm will result unless judicial review prior to importation is obtained.  See Best Key

Textiles Co. v. United States, 777 F.3d 1356, 1360 (Fed. Cir. 2015); Am. Air Parcel Forwarding

Co., 718 F.2d at 1551–52.  The court will address each factor in turn.

### 1)  Judicial review must be sought prior to importation of goods

As a general rule, "judicial review pursuant to 28 U.S.C. § 1581(h) is available only for

prospective transactions."  Inner Secrets/Secretly Yours, Inc. v. United States, 18 CIT 1028,

1031, 869 F. Supp. 959, 963 (1994).  Plaintiff's action does not seek to correct a decision made

by Customs with regard to past imports of gray market Duracell batteries.  Rather, Plaintiff's

action seeks declaratory and injunctive relief with respect to prospective imports.  See Compl.

¶¶ 1–3.  Plaintiff is seeking judicial review, therefore, prior to the importation of the goods

involved.  The first factor under 28 U.S.C. § 1581(h) has been satisfied.

### 2)  Judicial review must be sought of a ruling

A ruling within the meaning of 28 U.S.C. § 1581(h) is defined as "a determination by the Secretary of the Treasury as to the manner in which it will treat [a] completed transaction."  H.R. Rep. 96-1235, at 52 (1980), reprinted in 1980 U.S.C.C.A.N. 3729, 3758.  "Internal advice" or a "general interpretive ruling" will not meet the requirements under the statute.  See id.  The decision that is the subject of this case is Customs' grant of Lever-Rule protection to Duracell U.S. on March 22, 2017, which restricted the importation of gray market Duracell battery products.  The decision is not an internal advice ruling, which are rulings "available only for goods already imported and are not prospective."  See Am. Air Parcel Forwarding Co. v. United States, 5 CIT 8, 11–12, 557 F. Supp. 605, 608, aff'd, 718 F.2d 1546 (Fed. Cir. 1983), cert. denied, 466 U.S. 937 (1984).  Nor is the decision a general interpretive ruling because it "speak[s] to specific contemplated import transactions which contain identifiable merchandise and which will feel the impact of the ruling with virtual certainty."  Pagoda Trading Co. v. United States, 6 CIT 296, 298, 577 F. Supp. 22, 24 (1983).  In the decision at issue, Customs notified the public that it "granted 'Lever-Rule' protection for battery products bearing the 'DURACELL' mark, U.S. Trademark Registration No. 3,144,722/CBP Recordation No. TMK 16-01135."  See U.S. Customs and Border Protection Grant of "Lever-Rule" Protection, 51 Cust. Bull. & Dec. No. 12 at 1 (Mar. 22, 2017).  The decision identifies the merchandise with specificity and unequivocally directs Customs to restrict the importation of such merchandise, unless certain labeling requirements have been satisfied.  See id.

Customs' own regulations support the conclusion that Customs' decision in this case is a ruling reviewable under 28 U.S.C. § 1581(h).  Customs has defined a ruling as "a written

statement issued by the Headquarters Office or the appropriate office of Customs as provided in

this part that interprets and applies the provisions of the Customs and related laws to a specific

set of facts."  19 C.F.R. § 177.1(d)(1).  The definition provides that a ruling can either be "issued

in response to a written request therefor . . . set forth in a letter addressed to the person making

the request," or "published in the Customs Bulletin."  19 C.F.R. § 177.1(d)(1).  The decision at

issue in this case was (1) a written statement, (2) issued by the Headquarters Office,[15] (3)

published in the Customs Bulletin, and (4) interpreted 19 C.F.R. § 133.23(a)(3) as authorizing

import restrictions on gray market OEM bulk packaged batteries bearing the "DURACELL"

trademark.  The court finds that Customs' decision falls squarely within the regulatory definition

of a ruling and constitutes the type of ruling within the scope of review under 28 U.S.C.

§ 1581(h).[16]  The second factor under 28 U.S.C. § 1581(h) has therefore been satisfied.

---

[15] Customs defines the "Headquarters Office" as "Regulations and Rulings, Office of International Trade at Headquarters, U.S. Customs and Border Protection, Washington, DC."  19 C.F.R. § 177.1(d)(6).  The decision here was issued by the Intellectual Property Rights Branch within that office.  See U.S. Customs and Border Protection Grant of "Lever-Rule" Protection, 51 Cust. Bull. & Dec. No. 12 at 1 (Mar. 22, 2017).

[16] Plaintiff argues primarily that the court possesses jurisdiction pursuant to 28 U.S.C. § 1581(i) due to apparent concerns that declaring Customs' decision a "ruling" reviewable under 28 U.S.C. § 1581(h) would prevent the court from ultimately finding that Customs' decision was a "rule" under the APA and subject to notice and comment rulemaking requirements.  See Pl.'s Suppl. Mem. Opp'n Defs.' Mot. Dismiss 3–9.  The court notes that Plaintiff's concerns are misplaced because the court may conclude that Customs' decision is both a "ruling" for purposes of 28 U.S.C. § 1581(h) and a "rule" for purposes of the APA.  See Am. Frozen Food Institute, Inc. v. United States, 18 CIT 565, 855 F. Supp. 388 (1994) (finding that the decision made by Customs was both a ruling reviewable under 28 U.S.C. § 1581(h) and a rule subject to APA rulemaking requirements).  The two are not mutually exclusive.

### 3)  The ruling must relate to certain subject matter

To determine if the ruling relates to the necessary subject matter, the court must

determine whether the ruling involves the required subject matter of 28 U.S.C. § 1581(h).  See

Holford USA Ltd. Inc. v. United States, 19 CIT 1486, 1489, 912 F. Supp. 555, 558 (1995).  The

Customs' Bulletin notice announced that "[i]mportation of the . . . subject gray market Duracell

battery products is restricted, unless the labeling requirements of 19 CFR § 133.23(b) have been

satisfied."  U.S. Customs and Border Protection Grant of "Lever-Rule" Protection, 51 Cust. Bull.

& Dec. No. 12 at 1 (Mar. 22, 2017).  The statute expressly provides for pre-importation review

of "a ruling . . . related to . . . restricted merchandise."  See 28 U.S.C. § 1581(h).  The Lever-Rule

ruling at issue is, by its terms, a restriction on imports of gray market battery products bearing

the Duracell trademark.  Thus, the ruling relates to the subject matter of the statute.  The third

factor under 28 U.S.C. § 1581(h) has therefore been satisfied.

### 4)  The importer must demonstrate that irreparable harm would occur unless judicial review prior to importation is obtained

The standard for proving irreparable harm in the context of 28 U.S.C § 1581(h) is

"essentially identical to that used to determine irreparable injury in cases where injunctive relief

is sought."  Otter Products, LLC. v. United States, 38 CIT __, __, 37 F. Supp. 3d 1306, 1317

(2014) (quoting Connor v. United States, 24 CIT 195, 199, 2000 WL 341097 *1, *4 (2000)).

While allegations of financial harm may not rise to the level of irreparable harm, see Sampson v.

Murray, 415 U.S. 61, 90 (1974), harm such as "[p]rice erosion, loss of goodwill, damage to

reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."

Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012); see also CPC Int'l,

Inc. v. United States, 19 CIT 978, 979, 896 F. Supp. 1240, 1243 (1995).

Through an affidavit from the president of XYZ Corporation, witness testimony that was

subject to cross-examination during the hearing held on June 14, 2017, and an exhibit indicating

that Plaintiff's shipments of batteries have been held by Customs, Plaintiff has established that it

would suffer irreparable harm without pre-importation judicial review of Customs' grant of

Lever-Rule protection.  See John Doe Affidavit; Confidential Hearing; Confidential Ex. 3.

Plaintiff has shown that as a result of the Lever-Rule ruling at issue, Plaintiff has lost

approximately six customers (approximately 40% of its total customers), has lost revenue,[17] has

had several contracts cancelled, has suffered injury to his business reputation, has suffered injury

to his goodwill with long-standing customers, and has lost the confidence of his customers.  See

John Doe Affidavit ¶¶ 6–11; Confidential Hearing at 0:08:30–0:10:13, 0:34:02–0:34:12,

0:41:52–0:42:08.  Plaintiff's customers canceled their orders and were reluctant to make any

future purchases from Plaintiff because of concerns "that the batteries will be seized by

[Customs], or that they will be exposed to suit and harassed by the [trademark owner]."  John

Doe Affidavit ¶ 6.  Witness testimony indicated that, without judicial review at this juncture,

Plaintiff would lose additional business opportunities, suffer harm to his goodwill and reputation,

and be unable to continue business operations.  See Confidential Hearing at 0:09:05–0:10:13;

0:25:44–0:26:06; see also John Doe Affidavit ¶¶ 6–11.

---

[17] Plaintiff's witness testified that he has lost approximately [[                    ]] in business.  See
Confidential Hearing at 0:08:50–0:08:53.

Plaintiff's witness also testified that Customs had already held Plaintiff's battery shipments.[18]  See Confidential Hearing at 0:23:55–0:24:35; Confidential Ex. 3.  Defendant confirmed that Customs held approximately six of Plaintiff's shipments while awaiting Plaintiff's posting of the bond pursuant to the temporary restraining order issued by the court.[19]  See id. at 1:36:30–1:38:44; In-Person Status Conference at 0:14:41–0:15:25, June 20, 2017, ECF No. 47.  Defendant clarified that Customs held Plaintiff's shipments, but would not move forward with seizure or forfeiture proceedings pursuant to the Lever-Rule until the court decides the application for a preliminary injunction and the motion to dismiss pending before this court.

---

[18] Plaintiff testified that the value of shipments held by Customs at the time totaled approximately [[          ]] in goods.  See Confidential Hearing at 0:29:57–0:30:00.

[19] Pursuant to USCIT Rule 65, the court required Plaintiff to post security equal to the entered value of the shipments as a condition to the temporary restraining order.  See Temporary Restraining Order, June 1, 2017, ECF No. 32; Temporary Restraining Order Extension, June 15, 2017, ECF No. 39.  Plaintiff filed a letter with the court on June 19, 2017 requesting a hearing regarding the amount of security because Customs has held all of Plaintiff's shipments of batteries pursuant to the temporary restraining order.  See Confidential Letter re Issues Relating to Temporary Restraining Order and Security, June 19, 2017, ECF No. 42.

A hearing was held on June 20, 2017 to determine whether the security required by the temporary restraining order should be reduced.  See In-Person Status Conference, June 20, 2017, ECF No. 47.  Defendant confirmed during the hearing that a number of Plaintiff's shipments during the temporary restraining order period were not released because Plaintiff did not post the security required by the court's order.  See id.  Plaintiff requested that the court lower the required security to a one-time bond in the amount of $25,000 because Defendant is not incurring any monetary costs or damages by Customs being restrained from enforcing Lever-Rule restrictions against Plaintiff's shipments.  See Confidential Letter re Issues Relating to Temporary Restraining Order and Security; In-Person Status Conference.

After the hearing, the court amended the security requirement to a one-time bond in the amount of $25,000.  See Amendment to Temporary Restraining Order Extension, June 21, 2017, ECF No. 48.  The Parties filed a status report confirming that Plaintiff posted the $25,000 bond and that Customs has released the holds on Plaintiff's shipments in compliance with the temporary restraining order.  See Joint Statement, June 23, 2017, ECF No. 50.  The temporary restraining order became effective when Plaintiff posted the required security with the Clerk of the Court on June 22, 2017.  See Letter re Payment of Bond, June 22, 2017, ECF No. 49.

See In-Person Status Conference at 0:14:41–0:15:25.  Plaintiff's witness testified that he expects several additional shipments of batteries to arrive at the port in the coming weeks,[20] which he expects also will be denied entry and will be held by Customs pursuant to the Lever-Rule.  See Confidential Hearing at 0:22:21–0:22:31, 0:22:38–0:23:05, 0:23:47–0:23:48.

The harms alleged by Plaintiff include significant non-monetary injuries to goodwill, reputation, and customer confidence that occurred prior to importation in anticipation of Customs' application of the Lever-Rule for Duracell batteries.  Plaintiff's entries may also be subject to seizure and forfeiture, absent the ability to comply with any labeling requirements imposed by Customs.  If Plaintiff is unable to obtain judicial review before importation of the goods, Plaintiff will experience harm that cannot be remedied by monetary relief.[21]  Therefore, Plaintiff will suffer irreparable harm if it is unable to obtain judicial review prior to the importation of the merchandise.  The fourth factor under 28 U.S.C. § 1581(h) has also been satisfied.[22]

---

[20] Plaintiff's upcoming shipments total approximately [[            ]] in goods.  See Confidential Hearing at 0:22:21–0:22:31.

[21] In any event, the APA does not authorize monetary relief.  See 5 U.S.C § 702; Wopsock v. Natchees, 454 F.3d 1327, 1333 (Fed. Cir. 2006) (noting that "the APA does not authorize an award of money damages at all; to the contrary, section 10(a) of the APA, 5 U.S.C. § 702, specifically limits the Act to actions 'seeking relief other than money damages.'"); Canadian Lumber Trade All. v. United States, 30 CIT 892, 897, 441 F. Supp. 2d 1259, 1265 (2006).

[22] Defendant contends that Plaintiff has not satisfied its burden of proof under 28 U.S.C. § 2639(b).  That statutory provision puts the burden on Plaintiff to demonstrate by clear and convincing evidence that it will suffer irreparable harm absent pre-importation judicial review. See 28 U.S.C. § 2639(b).  The court finds that Plaintiff has made the required demonstration by clear and convincing evidence and has met its burden of proof.

The court finds that Plaintiff has alleged sufficient facts to demonstrate that the court has jurisdiction under 28 U.S.C. § 1581(h) to hear Plaintiff's claims regarding the validity of the Lever-Rule restrictions on gray market Duracell battery products. Because the court finds that it has jurisdiction under 28 U.S.C. § 1581(h), the court does not have jurisdiction under 28 U.S.C. § 1581(i)(4) in the instant case.

### B.  Standing and Ripeness

Defendant argues that Plaintiff's action must be dismissed, even if 28 U.S.C. § 1581 provides the court with jurisdiction, because Plaintiff does not have standing and the issues are not ripe for judicial review. See Defs.' Mot. Dismiss and Resp. Pl.'s Appl. Prelim. Inj. 6–17. An Article III court has authority only over actions where there is a live case or controversy. See Liner v. Jafco, Inc., 375 U.S. 301, 306 (1964); 3V, Inc. v. United States, 23 CIT 1047, 1049, 83 F. Supp. 2d 1351, 1352–53 (1999). The party bringing an action must establish that it has standing to bring suit, see Raines v. Byrd, 521 U.S. 811, 818 (1997) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)), and the issues raised must be ripe for judicial resolution in order to satisfy the Article III case or controversy requirement. See Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807 –808 (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)). The court explains below that this action presents a case or controversy satisfying the requirements of Article III of the U.S. Constitution.

### 1) Standing

Defendant asserts that, even if a provision under 28 U.S.C. § 1581 provides the court with jurisdiction, Plaintiff lacks standing to bring this action. See Defs.' Mot. Dismiss and Resp. Pl.'s Appl. Prelim. Inj. 6–7. "Article III standing requires plaintiffs to demonstrate: (1) that they

have suffered some injury-in-fact; (2) a causal connection between the defendant's conduct and

this injury-in-fact; and (3) that this injury is redressable by the court." Canadian Lumber Trade

Alliance v. United States, 30 CIT __, __, 425 F. Supp. 2d 1321, 1335 (2006) (citing Lugan, 504

U.S. at 560). Plaintiff has been engaged in the business of importing and distributing gray

market Duracell batteries for over twenty-seven years. Plaintiff has already been adversely

affected or aggrieved by Customs' restriction on imports of gray market Duracell batteries. See

John Doe Affidavit ¶ 6; Confidential Hearing at 0:08:30–0:10:13, 0:34:02–0:34:12, 0:41:52–

0:42:08. The harm was a direct result of Customs' decision to impose Lever-Rule restrictions on

gray market Duracell batteries, as evidenced by the fact that Plaintiff's customers feared "that the

batteries will be seized by [Customs], or that they will be exposed to suit and harassed by the

[trademark owner]." John Doe Affidavit ¶ 6. It is within the authority of the court to hold

unlawful and set aside agency rules formulated without observing procedures that are required

by law or any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with the law. See 5 U.S.C. § 706(2). Plaintiff satisfies all three requirements.

Defendant argues that the statutory standing requirement under 28 U.S.C. § 2631 is fatal

to Plaintiff's action because Plaintiff would not be able to protest the seizure of its merchandise

and bring an action pursuant to 28 U.S.C. § 1581(a). See Defs.' Suppl. Resp. Br. 3–4. An action

under 28 U.S.C. § 1581(h) may only be commenced "by the person who would have standing to

bring a civil action under section 1581(a) of this title if he imported the goods involved and filed

a protest which was denied, in whole or in part, under section 515 of the Tariff Act of 1930." 28

U.S.C. § 2631. The court disagrees that the scope of 28 U.S.C. § 1581(h) is strictly confined to

the matters referred to in 28 U.S.C. § 1581(a) and 19 U.S.C. § 1514(a). The protest mechanism

and judicial review under 28 U.S.C. § 1581(a) allow an importer to challenge Customs' decision

to exclude merchandise, whereas judicial review under 28 U.S.C. § 1581(h) allows an importer

to challenge a Customs ruling relating to restricted merchandise.  It is axiomatic that Congress

would not have used the language "restricted merchandise" had it intended to limit 28 U.S.C.

§ 1581(h) to the exclusion of merchandise.  An examination of the legislative history reveals that

the purpose of the standing provision relied upon by Defendant is to allow only importers the

ability to obtain judicial review prior to the importation of merchandise "because the importer is

the party directly affected by the ruling of the Secretary or his refusal to issue or change a

ruling."  See H.R. Rep. 96-1235, at 52 (1980), reprinted in 1980 U.S.C.C.A.N. 3729, 3763–64;

see also 19 U.S.C. § 1514(c)(2) (listing parties other than importers entitled to file a protest).

The plaintiff in this action is an importer.  Thus, the court finds that Plaintiff has standing to

bring this action.

### 2)  Ripeness

Defendant asserts that Plaintiff's action is not ripe for review.  See Defs.' Mot. Dismiss

and Resp. Pl.'s Appl. Prelim. Inj. 6–10.  To determine whether an action taken by an agency is

ripe for judicial review, the court must evaluate two factors: "(1) the fitness of the issues for

judicial decision and (2) the hardship to the parties of withholding court consideration."  See

Nat'l Park Hospitality Ass'n, 538 U.S. at 808 (citing Abbott Labs., 387 U.S. at 149).

Issues are fit for judicial review if the agency action was final and if the issue presented is

purely legal.  See Abbott Labs., 387 U.S. at 149; Sys. Application & Techs., Inc. v. United

States, 691 F.3d 1374, 1384 (Fed. Cir. 2012).  Customs issued a notice on January 25, 2017 that

it received an application from Duracell U.S. for Lever-Rule protection for gray market batteries

bearing the "DURACELL" trademark.  Customs published a second notice on March 22, 2017

announcing that it granted Duracell U.S.'s application for Lever-Rule protection.  Customs'

decision was final because it "mark[ed] the 'consummation' of the agency's decision making

process" and notified the public of the type of conduct "from which 'legal consequences will

flow.'"  See Bennett v. Spear, 520 U.S. 154, 177–78 (1997).  Customs' second notice declared

definitively that the importation of the subject gray market batteries is restricted and that its

decision was not subject to change or any conditions.  Further, Customs' regulations provide that

Lever-Rule restrictions take effect upon granting an application for protection.  See 19 C.F.R. §

133.2(f).  The issues in Plaintiff's action are purely legal because additional facts are not needed

for the court to determine whether Customs was required to comply with notice and comment

rulemaking requirements.  See Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733 (1998).

The court determines whether the parties will experience hardship by considering

whether the impact of the agency action would be felt immediately and whether substantially

irreparable consequences would result from requiring a later challenge.  See Nat'l Park

Hospitality Ass'n, 538 U.S. at 810.  The hardship requirement is satisfied here because Plaintiff

has shown that it has already experienced, and will continue to experience, considerable harm as

a result of Customs' grant of Lever-Rule protection.  See John Doe Affidavit ¶¶ 6–11;

Confidential Hearing at 0:08:30–0:10:13, 0:34:02–0:34:12, 0:41:52–0:42:08; see also Am.

Frozen Food Institute, Inc. v. United States, 18 CIT 565, 570 n.11, 855 F. Supp. 388, 393 n.11

(1994) (citing Association of Food Indus., Inc. v. Von Raab, 9 CIT 626, 627, 624 F. Supp. 1557,

1558 (1985)).  The court concludes that Plaintiff's action is ripe for review because Customs'

decision to grant Lever-Rule protection was a final agency action, the issues in this action would

not benefit from further factual development, and Plaintiff would continue to suffer hardship

without judicial review at this point in time.[23]

## II.    Plaintiff's Application for a Preliminary Injunction

Plaintiff's Application for a Preliminary Injunction seeks to enjoin Customs from

enforcing Lever-Rule restrictions against imports of gray market Duracell batteries during the

pendency of the litigation.  See Pl.'s Appl. Prelim. Inj.; Pl.'s Mem. Supp. Appl. Prelim. Inj. 11–

25.  Defendant argues that Plaintiff has failed to satisfy the necessary requirements to grant the

extraordinary relief sought.  See Defs.' Mot. Dismiss and Resp. Pl.'s Appl. Prelim. Inj. 22–31.

The Court generally is empowered to grant injunctive relief where appropriate, see 28 U.S.C.

§ 2643(c)(1).  However, the scope of relief for actions under 28 U.S.C. § 1581(h) is limited to

declaratory relief.  See 28 U.S.C. § 2643(c)(4); see also H.R. Rep. 96-1235, at 61 (1980),

reprinted in 1980 U.S.C.C.A.N. 3729, 3773.  Plaintiff's potential remedy in this action is limited

to declaratory relief with respect to prospective imports because the court has jurisdiction

---

[23] The court does not address the merits of the Parties' claims in this opinion, but limits its analysis to the preliminary issues raised in the motion to dismiss for lack of jurisdiction and the application for a preliminary injunction.  The court will address the merits of the case at a later time as appropriate, including whether Customs' grant of the Lever-Rule protection qualifies as rulemaking within the meaning of the APA and whether a violation of the APA has occurred.

pursuant to 28 U.S.C. § 1581(h).[24]  The court accordingly denies Plaintiff's Application for a

Preliminary Injunction.[25]

**CONCLUSION**

Therefore, upon consideration of Plaintiff's Application for a Preliminary Injunction,

Defendants' Memorandum in Support of Their Motion to Dismiss and Response in Opposition to

Plaintiff's Application for Preliminary Injunction, and all other papers and proceedings in this

action, it is hereby

**ORDERED** that Defendant's motion to dismiss for lack of jurisdiction is denied; and it is

further

**ORDERED** that Plaintiff shall file an amended complaint on or before July 25, 2017 to

amend its jurisdictional allegations to the extent allowed by this opinion; and it is further

**ORDERED** that Plaintiff's application for a preliminary injunction is denied; and it is

further

**ORDERED** that the Third Temporary Restraining Order Extension entered by this court

on July 10, 2017 is dissolved and the Clerk of the Court shall return the security posted by

Plaintiff; and it is further

---

[24] Plaintiff may continue to import gray market Duracell batteries during the pendency of this litigation, but with the understanding that the goods may be held, detained, and potentially subject to seizure and forfeiture due to the Lever-Rule restrictions.

[25] Defendant contends that Plaintiff's complaint fails to state a claim upon which relief could be granted because the court does not have authority under 28 U.S.C. § 1581(h) to order injunctive relief.  See Defs.' Suppl. Resp. Br. 9.  The court finds that Defendant's contention is without merit because Plaintiff's cause of action is not limited to injunctive relief.  Plaintiff also requests the court to declare null and void Customs' grant of Lever-Rule protection against the importation of gray market Duracell batteries.  See Compl. ¶¶ 1, 3, 31–54.  It is within the court's authority under 28 U.S.C. § 1581(h) to provide such declaratory relief if appropriate.

**ORDERED** that Plaintiff's Application to Extend Temporary Restraining Order, ECF

No. 66, is denied as moot; and it is further

**ORDERED** that the Parties shall confer and submit a joint proposed scheduling order for

the remainder of this action on or before August 1, 2017.


/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:    July 17, 2017
          New York, New York