Slip Op. 17-125

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **MILECREST CORPORATION,** |  |
| **Plaintiff,** |  |
| v. |  |
| **UNITED STATES and U.S. CUSTOMS & BORDER PROTECTION,** | **Before: Jennifer Choe-Groves, Judge** |
| **Defendants,** | **Court No. 17-00125** |
| and |  |
| **DURACELL U.S. OPERATIONS, INC.,** |  |
| **Defendant-Intervenor.** |  |

## <u>OPINION AND ORDER</u>

[Denying Defendant-Intervenor's motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief may be granted.]

Dated:  September 15, 2017

<u>John M. Peterson</u>, <u>Russell A. Semmel</u>, and <u>Richard F. O'Neill</u>, Neville Peterson LLP, of New York, N.Y., for Plaintiff Milecrest Corporation.

<u>Alexander J. Vanderweide</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendants the United States and U.S. Customs and Border Protection.  With him on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, <u>Reginald T. Blades, Jr.</u>, Assistant Director, and <u>Tara K. Hogan</u>, Assistant Director.  Of counsel on the brief was <u>Beth C. Brotman</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, New York, N.Y.

<u>Frances P. Hadfield</u>, Crowell & Moring LLP, of New York, N.Y., and <u>Robert N. Phillips</u> and <u>John Patrick Donohue</u>, Reed Smith LLP, of San Francisco, CA and Philadelphia, PA, for Defendant-Intervenor Duracell U.S. Operations, Inc.

Choe-Groves, Judge:  Milecrest Corporation ("Plaintiff") is a company engaged in the business of importing and distributing bulk-packaged gray market batteries bearing the "DURACELL" mark, a United States trademark currently owned by Duracell U.S. Operations, Inc. ("Duracell").  See First Amended Compl., July 25, 2017, ECF No. 78.  Plaintiff brings this action pursuant to 28 U.S.C. § 1581(h) (2012)[1] seeking judicial review of the decision made by U.S. Customs and Border Protection ("Customs") to grant Lever-Rule protection to Duracell, thereby restricting imports of certain gray market batteries bearing its trademark.[2]  See First Amended Compl. ¶ 1; see also U.S. Customs and Border Protection Grant of "Lever-Rule" Protection, 51 Cust. Bull. & Dec. No. 12 at 1 (Mar. 22, 2017).

Before the court is Duracell's motion to dismiss Plaintiff's amended complaint, which was filed to amend jurisdictional allegations in the original complaint.  See Def.-Intervenor Duracell U.S. Operations, Inc.'s Mot. Dismiss, Aug. 8, 2017, ECF No. 92 ("Duracell Mot. Dismiss").  Pursuant to USCIT Rule 12(b)(1), Duracell argues that 28 U.S.C. § 1581(h) does not provide the court with jurisdiction in this action.  See Duracell Mot. Dismiss 7–16, 28–31.

---

[1] All further citations to Titles 5, 19, and 28 of the U.S. Code are to the 2012 edition.

[2] Under the Lever-Rule, United States trademark owners have the ability to submit an application to Customs requesting restrictions on imports of gray market goods bearing a genuine trademark that are physically and materially different from the goods authorized by the United States trademark owner for importation or sale in the United States.  See 19 C.F.R. §§ 133.2(e) (providing trademark owners with the ability to apply for Lever-Rule protection), 133.23(a)(3) (describing the goods subject to Lever-Rule protections).  The applicant claiming that gray market goods possess physical and material differences "must state the basis for such a claim with particularity, and must support such assertions by competent evidence and provide summaries of physical and material differences for publication."  19 C.F.R. § 133.2(e).  If Customs grants a trademark owner's application for Lever-Rule protection, the restricted gray market goods shall be denied entry into the United States, detained for a minimum period of thirty days, and potentially subject to seizure and forfeiture proceedings.  See 19 C.F.R. § 133.23(c)–(f).

Duracell also argues that Plaintiff's alternative basis for jurisdiction under 28 U.S.C. § 1581(i)(4)

is not proper.  See id. at 13–14.  Pursuant to USCIT Rule 12(b)(6), Duracell argues that each

count in Plaintiff's amended complaint fails to state a claim upon which relief may be granted.

See id. at 16–28.  The United States and Customs (collectively, "Government") join Duracell's

request to dismiss Plaintiff's amended complaint.  See Defs.' Resp. Def.-Intervenor's Mot.

Dismiss 1–5, Aug. 9, 2017, ECF No. 94 ("Gov't Resp.").  Plaintiff filed a response in

opposition to Duracell's motion arguing that the court has jurisdiction and that the claims for

relief in this action were pleaded adequately in the amended complaint.  See Pl.'s Resp. Opp'n

Def.-Intervenor's Mot. Dismiss 4–28, Aug. 9, 2017, ECF No. 96 ("Pl.'s Resp.").  Briefing on the

motion to dismiss concluded with the filing of Duracell's reply.  See Def.-Intervenor Duracell

U.S. Operations, Inc.'s Reply Pl.'s Resp. Opp'n Mot. Dismiss, Aug. 11, 2017, ECF No. 101

("Duracell Reply").

    For the reasons explained below, the court denies Duracell's motion to dismiss for lack of

jurisdiction and for failure to state a claim upon which relief can be granted.

## BACKGROUND

    The court presumes familiarity with the facts of this case as set forth in its previous

opinion and order issued on July 17, 2017.  See XYZ Corporation v. United States, 41 CIT __,

Slip Op. 17-88, at *4–9 (July 17, 2017) ("Opinion and Order Denying Gov't Mot. Dismiss").[3]

---

[3] Plaintiff filed this action under the fictitious name "XYZ Corporation" because Plaintiff feared
that it would be subject to commercial retaliation if its identity were revealed.  See Compl. ¶ 1
n.1, May 19, 2017, ECF No. 2.  Duracell notified counsel for Plaintiff on July 28, 2017 that it
objected to Plaintiff's assumption of a fictitious name in this action and challenged Plaintiff's
designation of its identity as confidential information under the amended judicial protective

(footnote continued)

The court now recounts and supplements the facts that are relevant to decide Duracell's motion

to dismiss.

## A. Administrative Proceedings

Duracell is the United States trademark owner of the 'DURACELL' mark, which has

been registered with the U.S. Patent and Trademark Office, U.S. Trademark Reg. No. 3,144,722,

and recorded with Customs, CBP Recordation No. TMK 16-01135.  Duracell filed an application

with Customs on October 13, 2016 requesting Lever-Rule protection against gray market OEM

bulk packaged batteries and foreign retail packaged batteries bearing Duracell's trademark.  See

Duracell Request for Lever-Rule Protection, Doc. 1, CBP000006–CBP000008 (Oct. 13, 2016)

("Duracell Lever-Rule Request").[4]  Duracell stated in its application that the OEM bulk

packaged batteries and foreign retail packaged batteries differ physically and materially from the

---

order.  See Duracell Mot. Dismiss 1 n.1.  Plaintiff refused to withdraw the designation of its
identity as confidential information and the court was required to intervene to resolve the
disagreement.  On September 12, 2017, the court ordered that Plaintiff's identity shall not be
treated as confidential information and that Plaintiff may not proceed anonymously in this action.
See XYZ Corporation v. United States, 41 CIT __, Slip Op. 17-124 (September 12, 2017).
Pursuant to the court's order, Plaintiff refiled a revised public summons and amended complaint
without redactions of Plaintiff's identity on September 13, 2017.  See Revised Summons, Sept.
13, 2017, ECF No. 118; Revised First Amended Compl., Sept. 13, 2017, ECF No. 119.  Any
reference to "XYZ Corporation" in this opinion refers to Plaintiff.

[4] On August 18, 2017, the Government submitted the confidential and public administrative
record of all documents that were considered by Customs in its decision to grant Duracell's
application for Lever-Rule protection.  See Confidential Administrative Record, Aug. 18, 2017,
ECF No. 106; Public Administrative Record, Aug. 18, 2017, ECF No. 107.  The Government
also submitted an index that provide document numbers and page numbers to identify the
documents from the confidential and public administrative record.  For ease of reference, the
court will use the document numbers and page numbers assigned by Customs for all further
citations to the documents from the administrative record.

battery products authorized by Duracell for sale or importation in the United States.  See id.

Duracell's Lever-Rule application was not made publicly available.

On January 25, 2017, Customs issued a notice in the U.S. Customs Bulletin and

Decisions publication that it had received an application from Duracell seeking Lever-Rule

protection "against importations of OEM bulk packaged batteries and foreign retail packaged

batteries, intended for sale in countries outside the United States that bear the 'DURACELL'

mark, U.S. Trademark Registration No. 3,144,722/CBP Recordation No. TMK 16-01135."  U.S.

Customs and Border Protection Receipt of Application for "Lever-Rule" Protection, 51 Cust.

Bull. & Dec. No. 4 at 1 (Jan. 25, 2017).  Customs' notice did not seek input from the public.  See

id.

By letter dated March 1, 2017, Customs informed Duracell that its application for Lever-

Rule protection had been granted.  See E-mail From Customs to Duracell re Signed Decision

Granting Lever-Rule Protection, Doc. 9, CBP000033–CBP000035 (Mar. 1, 2017).  Customs

issued a second notice in the U.S. Customs Bulletin and Decisions publication on March 22,

2017, notifying the public that it had granted Duracell's application for Lever-Rule protection.

See U.S. Customs and Border Protection Grant of "Lever-Rule" Protection, 51 Cust. Bull. &

Dec. No. 12 at 1 (Mar. 22, 2017).  The notice explained that "gray market Duracell battery

products differ physically and materially from the Duracell battery products authorized for sale

in the United States with respect to the following product characteristics: label warnings,

consumer assistance information, product guarantees, and warranty coverage."  Id.  Customs

declared that the importation of such batteries was restricted and subject to seizure and forfeiture,

unless certain labeling requirements had been satisfied.  See id.  The Lever-Rule restrictions

became effective when Customs published the Customs Bulletin notice indicating that Duracell's

application had been granted.  See 19 C.F.R. § 133.2(f) (providing that Lever-Rule restrictions

take effect once Customs has made and issued a determination on the application for Lever-Rule

protection).

Counsel for Plaintiff sent a letter to Customs on April 10, 2017 requesting that it

reconsider its grant of Lever-Rule protection to Duracell.[5]  See First Amended Compl. Ex. C,

July 25, 2017, ECF No. 78-1.  The letter asserted that Customs' decision to grant Duracell

Lever-Rule protection is the type of rule that is subject to the notice and comment rulemaking

procedures required by the Administrative Procedure Act ("APA").  See id.  The letter also

claimed that Duracell was not entitled to Lever-Rule protection against bulk OEM batteries

because these gray market products are not physically and materially different from batteries that

are sold by Duracell.  See id.  Counsel for Plaintiff requested that Customs withdraw its

determination and solicit public comments regarding whether any Lever-Rule protection should

be granted with respect to these gray market battery products.  See id.  Plaintiff alleges that

Customs has declined to reconsider its decision to grant Lever-Rule protection to Duracell, see

First Amended Compl. ¶ 30, but Customs has not issued a written decision in response to

Plaintiff's letter requesting for reconsideration.

---

[5] The letter sent to Customs was dated May 17, 2017, see First Amended Compl. Ex. C, July 25, 2017, ECF No. 78-1, but the Government has clarified to the court that the letter was dated incorrectly and that the letter was sent to Customs on April 10, 2017.  See Gov't's Resp. 5.

### B.  Proceedings Before the Court

Plaintiff commenced this action on May 19, 2017 to obtain judicial review of Customs'

decision to grant Duracell Lever-Rule protection.  See Summons, May 19, 2017, ECF No. 1.

The complaint alleged that Customs' decision to grant Duracell Lever-Rule protection was:

(1) null and void because Customs failed to observe notice and comment rulemaking

requirements of the APA; (2) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with the law because Customs restricted the importation of gray market merchandise

that is not materially and physically different from the batteries authorized by Duracell for

importation or sale in the United States; and (3) arbitrary and capricious because the grant of

Lever-Rule protection was impermissibly vague in describing the gray market goods subject to

import restrictions.  See Compl. ¶¶ 31–54, May 19, 2017, ECF No. 2.  Plaintiff's complaint

invoked the court's residual jurisdiction under 28 U.S.C. § 1581(i)(4), alleging that this action

relates to the administration and enforcement of the exclusion of merchandise.  See Compl. ¶ 4.

The Government filed a motion to dismiss pursuant to USCIT Rule 12(b)(1) for lack of

jurisdiction on June 7, 2017.  See Defs.' Mem. Supp. Mot. Dismiss and Resp. Opp'n Pl.'s Appl.

Prelim. Inj., June 7, 2017, ECF No. 33.  The Government contended that this action does not fall

within any of the specific grants of jurisdiction under 28 U.S.C. § 1581, Plaintiff does not have

standing to bring this action, and the issues are not ripe for judicial review.  See id. at 17–21.

Plaintiff maintained that the court has jurisdiction pursuant to 28 U.S.C. § 1581(i) and refuted the

Government's standing and ripeness arguments.  See Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 4–

13, June 12, 2017, ECF No. 36.

In a letter dated June 27, 2017, the court requested the Parties to submit supplemental briefs addressing whether 28 U.S.C. § 1581(h) provides the court with jurisdiction.  See Request from the Court, June 27, 2017, ECF No. 53.  Plaintiff filed its supplemental brief on June 30, 2017, explaining that § 1581(h) would serve as a basis for jurisdiction if the court determines that Customs' decision to grant Duracell's application for Lever-Rule protection is a ruling reviewable under § 1581(h).  See Pl.'s Suppl. Mem. Opp'n Defs.' Mot. Dismiss 10, June 30, 2017, ECF No. 55.  The Government responded to Plaintiff's submission on July 6, 2017, arguing that this action does not satisfy the requirements for jurisdiction under § 1581(h) and that Plaintiff does not have standing to bring an action pursuant to § 1581(h).  See Def.'s Suppl. Resp. Br. Addressing 28 U.S.C. § 1581(h), July 6, 2017, ECF No. 58.

Duracell moved to intervene in this action.  See Ex Parte Appl. Leave Intervene, July 11, 2017, ECF No. 61.  The court granted Duracell permissive intervention and Duracell was entered as a defendant-intervenor in this action.[6]  See Order, July 13, 2017, ECF No. 63.  Duracell stated previously that it did not wish to participate in the briefing on the Government's motion to dismiss for lack of jurisdiction because Duracell believed "that the jurisdictional issues [were] appropriately briefed by the Parties."  See Ex Parte Appl. Leave Intervene.

After reviewing the Parties' briefs and supplemental briefs concerning the court's jurisdiction in this matter, the court held that it possesses jurisdiction under 28 U.S.C. § 1581(h).

---

[6] The Rules of the Court provide that a party may intervene as of right or with permission from the court.  See USCIT Rule 24(a)–(b).  The court granted Duracell permissive intervention because Duracell, as the applicant for the Lever-Rule grant at issue, "has a claim or defense that shares with the main action a common question of law or fact."  USCIT Rule 24(b).  Duracell did not claim in its motion that it had any right to intervene in this action.

See Opinion and Order Denying Gov't's Mot. Dismiss at \*9–20.  The court determined that

Plaintiff's action satisfies the jurisdictional preconditions for § 1581(h) because: (1) Plaintiff

seeks judicial review prior to the importation of goods, (2) Customs' decision to grant Duracell's

application for Lever-Rule protection constitutes the type of ruling within the scope of review

under § 1581(h), (3) the Lever-Rule grant relates to a restriction on imports of certain gray

market battery products, and (4) Plaintiff would be irreparably harmed if it is unable to obtain

judicial review prior to the importation of the merchandise.  See id. at \*13–20.  Because the court

found that it has jurisdiction under 28 U.S.C. § 1581(h), the court stated that it could not exercise

jurisdiction under § 1581(i)(4) as alleged in Plaintiffs complaint.  See id. at \*20.  The court also

found that the issues raised in this action are ripe for review and that Plaintiff satisfies Article III

standing requirements as well as the standing requirements to bring an action under 28 U.S.C.

§ 1581(h).  See id. at \*20–24.  The court denied, therefore, the Government's motion to dismiss

for lack of jurisdiction.  See id. at \*25.  The court instructed Plaintiff to amend the jurisdictional

allegations in its complaint to satisfy the pleading requirements under USCIT Rule 8(a)(1) and

directed the Parties to submit a joint proposed scheduling order for the remainder of this action.

See id. at \*11 n.13, 25.  Plaintiff filed its amended complaint on July 25, 2017.  See First

Amended Compl.

    The Parties were unable to come to an agreement regarding the schedule for the

remainder of this action and submitted separate proposed schedules.  See Proposed Scheduling

Order, Aug. 1, 2017, ECF No. 81; Proposed Scheduling Order, Aug. 1, 2017, ECF No. 82.

Plaintiff and the Government proposed that the case proceed to the merits, whereas Duracell

proposed a schedule that allotted time for Duracell to file a motion to dismiss Plaintiff's

amended complaint pursuant to USCIT Rule 12(b)(1) for lack of jurisdiction and USCIT Rule

12(b)(6) for failure to state a claim.  The court held a teleconference with the Parties on

August 3, 2017 to discuss the schedule for the remainder of the action.  See Teleconference,

Aug. 3, 2017, ECF No. 89.  On the same date, the court entered a scheduling order providing

Duracell with an opportunity to file a motion to dismiss and ordering expedited briefing on the

motion.  See Scheduling Order, Aug. 3, 2017, ECF No. 90.  However, the court reminded

Duracell during the teleconference that the court has already determined that it has jurisdiction

under § 1581(h) and cautioned Duracell that the court will only consider new information and

arguments regarding jurisdiction.  See Teleconference at 00:35:32–00:36:32.

On August 8, 2017, Duracell moved to dismiss Plaintiff's amended complaint for lack of

jurisdiction and for failure to state a claim.[7]  See Duracell Mot. Dismiss.  Duracell argues that 28

U.S.C. § 1581(h) does not provide the court with jurisdiction in this action because the Lever-

Rule grant is not the type of ruling that is reviewable under § 1581(h), Plaintiff has failed to

plead irreparable harm sufficiently, Plaintiff lacks prudential standing to bring this action, and

Plaintiff has failed to exhaust its administrative remedies prior to obtaining judicial review.  See

id. at 7–16, 28–31.  Duracell also contends that Plaintiff's alternative basis for jurisdiction under

28 U.S.C. § 1581(i)(4) does not provide the court with jurisdiction in this action.  See id. at 13–

14.  Duracell asserts further that each of the counts in Plaintiff's amended complaint fails to state

a claim upon which relief may be granted.  See id. at 16–31.  The Government filed its response

---

[7] The court had ordered Duracell to file its motion to dismiss on or before August 7, 2017.
See Scheduling Order, Aug. 3, 2017, ECF No. 90.  However, all filings due on August 7, 2017
became due on August 8, 2017 due to a technical failure in the Court's case management and
electronic case filing system.

to Duracell's motion on August 9, 2017, joining Duracell's request to dismiss Plaintiff's

amended complaint and explaining the Government's position on the issues raised in Duracell's

motion.  See Gov't's Resp.  Plaintiff also filed its response to Duracell's motion on August, 9,

2017, arguing that the court has jurisdiction and that the claims for relief were pleaded

adequately in the amended complaint.  See Pl.'s Resp.  Duracell filed its reply on August 11,

2017.  See Duracell Reply.

## DISCUSSION

When the court is presented with motions to dismiss under both USCIT Rule 12(b)(1)

and Rule 12(b)(6), the court generally decides the 12(b)(1) motion first because "[w]hether the

complaint states a cause of action on which relief could be granted is a question of law and just

as issues of fact it must be decided after and not before the court has assumed jurisdiction over

the controversy."  Bell v. Hood, 327 U.S. 678, 682 (1945).

### A.  Motion to Dismiss for Lack of Jurisdiction Pursuant to USCIT Rule 12(b)(1)

Duracell moves to dismiss this action for lack of jurisdiction pursuant to USCIT Rule

12(b)(1).  See Duracell Mot. Dismiss 7–16.  A court must have subject matter jurisdiction in

order for an action to proceed.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95

(1998).  The U.S. Court of International Trade, like all federal courts, is one of limited

jurisdiction and is "presumed to be 'without jurisdiction' unless 'the contrary appears

affirmatively from the record.'"  DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318

(Fed. Cir. 2006) (quoting King Iron Bridge & Mfg. Co. v. Otoe Cty., 120 U.S. 225, 226 (1887)).

The party invoking jurisdiction must "allege sufficient facts to establish the court's jurisdiction,"

id. (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936) and

KVOS, Inc. v. Assoc. Press, 299 U.S. 269, 277–78 (1936)), and therefore "bears the burden of

establishing it." Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006)

(citing Kokkenen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)). The court must draw all

reasonable inferences in favor of the non-movant when deciding a motion to dismiss for lack of

jurisdiction. See Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).

Plaintiff filed this action seeking declaratory and injunctive relief with respect to

Customs' decision to grant Duracell's application for Lever-Rule protection. Plaintiff's amended

complaint includes APA claims challenging the validity of the Lever-Rule restrictions. See First

Amended Compl. ¶¶ 32–59. Plaintiff claims that Customs' decision to grant Duracell's

application for Lever-Rule protection was (1) unlawful and must be set aside because Customs

failed to follow notice and comment rulemaking requirements of the APA, see First Amended

Compl. ¶¶ 32–47; see also 5 U.S.C. §§ 553, 706(2)(D); (2) arbitrary, capricious, an abuse of

discretion, and otherwise not in accordance with the law because Duracell has authorized the sale

and importation of the gray market battery products covered by the Lever-Rule grant, see First

Amended Compl. ¶¶ 48–52; see also 5 U.S.C. § 706(2)(A); and (3) arbitrary and capricious

because Customs' description of the gray market battery products subject to import restrictions

was impermissibly vague. See First Amended Compl. ¶¶ 53–59; see also 5 U.S.C. § 706(2)(A).

"[T]he APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review

agency actions." Califano v. Sanders, 430 U.S. 99, 105 (1977); see also Am. Air Parcel

Forwarding Co. v. United States, 718 F.2d 1546, 1552 (Fed. Cir. 1983) (providing that the APA

is not a jurisdictional statute and "does not give an independent basis for finding jurisdiction in

the Court of International Trade"). Rather, the court must have its own independent statutory

basis for jurisdiction in order for Plaintiff's action to proceed.  See Shinyei Corp. of Am. v.

United States, 355 F.3d 1297, 1304 (Fed. Cir. 2004).

The Court is empowered to hear civil actions brought against the United States pursuant

to the specific grants of jurisdiction enumerated under 28 U.S.C. § 1581(a)–(i).  Plaintiff's

amended complaint alleges that the court has jurisdiction pursuant to 28 U.S.C. § 1581(h) and

§ 1581(i)(4).  See First Amended Compl. ¶ 4.  The court notes that § 1581(i) provides for the

Court's residual jurisdiction and may not be invoked "'when jurisdiction under another

subsection of § 1581 is or could have been available.'"  Ford Motor Co. v. United States, 688

F.3d 1319, 1323 (Fed. Cir. 2012) (quoting Miller & Co. v. United States, 824 F.2d 961, 963

(Fed. Cir. 1987)).  Thus, the court need only determine whether residual jurisdiction exists in this

action if jurisdiction does not exist under § 1581(h).

Under § 1581(h), an importer may seek review of a ruling prior to the importation of

goods.  The statute reads as follows:

> The Court of International Trade shall have exclusive jurisdiction over any civil
> action commenced to review, prior to the importation of the goods involved, a
> ruling issued by the Secretary of the Treasury . . . relating to . . . restricted
> merchandise, . . . or similar matters, but only if the party commencing the civil
> action demonstrates to the court that he would be irreparably harmed unless given
> an opportunity to obtain judicial review prior to such importation.

28 U.S.C. § 1581(h).  This provision has been interpreted to set out four requirements to

establish jurisdiction: (1) judicial review must be sought prior to importation; (2) judicial review

must be sought of a ruling, a refusal to issue a ruling, or a refusal to change such a ruling; (3) the

ruling must relate to certain subject matter; and (4) the importer must demonstrate that

irreparable harm will result unless judicial review prior to importation is obtained.  See Best Key

Textiles Co. v. United States, 777 F.3d 1356, 1360 (Fed. Cir. 2015) (citing Am. Air Parcel

Forwarding Co., 718 F.2d at 1551–52).

      The court determined in its previous opinion that the aforementioned four requirements

have been met, to wit: (1) Plaintiff's action seeks relief with respect to prospective imports; (2)

the Lever-Rule grant is a determination as to the manner in which Customs will treat a completed

transaction; (3) the ruling relates to the subject matter of the statute as it poses a restriction on

imports of gray market battery products bearing the Duracell trademark; and (4) the evidence on

the record indicated that, without judicial review at this juncture, Plaintiff would be irreparably

harmed through the loss of revenue, loss of business opportunities, harm to goodwill and

reputation with long-standing customers, and the inability to continue business operations.

See Opinion and Order Denying Gov't's Mot. Dismiss at *13–20.  Thus, the court held that

28 U.S.C. § 1581(h) confers the court with jurisdiction over this action.

      Plaintiff's amended complaint has not raised any issues that would invalidate the court's

previous opinion regarding jurisdiction.  Duracell has moved, nonetheless, to dismiss Plaintiff's

amended complaint for lack of jurisdiction.  See Duracell Mot. Dismiss 7–16, 28–31.  Duracell

does not argue that there has been an intervening change in the facts since the court issued its

opinion on July 17, 2017 that divests the court of § 1581(h) jurisdiction.  Rather, Duracell

interposes a flurry of new legal arguments challenging the court's jurisdiction under § 1581(h)

that the Government did not raise in its USCIT Rule 12(b)(1) motion to dismiss.  See id.  First,

Duracell argues that Lever-Rule decisions made pursuant to Part 133 of Customs' regulations are

distinguishable from the rulings described under Part 177 of Customs' regulations and are not,

therefore, the type of "rulings" susceptible to judicial review under § 1581(h).  See id. at 7–11.

Second, Duracell asserts that Plaintiff has failed to plead irreparable harm adequately in the

amended complaint and that the alleged irreparable harm was not caused by Customs' decision

to grant Duracell's application for Lever-Rule protection.  See id. at 11–13.  Third, Duracell

contends that Plaintiff does not have prudential standing and is not within the zone of interests

protected by the Lever-Rule.  See id. at 14–16.  Fourth, Duracell invokes the exhaustion doctrine

and claims that Plaintiff has failed to exhaust its administrative remedies before bringing this

action.  See id. at 28–31.  The court continues to find that it possesses jurisdiction under

§ 1581(h) for the reasons stated in the court's previous opinion and, as explained below,

Duracell's arguments fail to convince the court otherwise.[8]

> *1. Ruling*

Duracell contends that the Lever-Rule decision that is the subject of this action is not a

ruling that is subject to judicial review under 28 U.S.C. § 1581(h).  See Duracell Mot. Dismiss

7–11.  The court addressed this issue in its previous opinion in determining that jurisdiction

under § 1581(h) is proper and provided the following explanation:

> A ruling within the meaning of 28 U.S.C. § 1581(h) is defined as "a determination
> by the Secretary of the Treasury as to the manner in which it will treat [a]
> completed transaction."  H.R. Rep. 96-1235, at 52 (1980), reprinted in 1980
> U.S.C.C.A.N. 3729, 3758.  "Internal advice" or a "general interpretive ruling"
> will not meet the requirements under the statute.  See id.  The decision that is the
> subject of this case is Customs' grant of Lever-Rule protection to Duracell U.S.
> on March 22, 2017, which restricted the importation of gray market Duracell

---

[8] As indicated above, Plaintiff also invokes the court's residual jurisdiction under § 1581(i)(4) as
an alternative basis for jurisdiction in its amended complaint.  See First Amended Compl. ¶ 6.
Duracell argues that jurisdiction under § 1581(i)(4) is not proper in this case.  See Duracell Mot.
Dismiss 13–14.  The court declines to opine on this issue because the court has jurisdiction under
§ 1581(h).  See Ford Motor Co., 688 F.3d at 1323 (providing that the court's residual jurisdiction
may not be invoked "when jurisdiction under another subsection of § 1581 is or could have been
available") (quoting Miller & Co., 824 F.2d at 963).

> battery products.  The decision is not an internal advice ruling, which are rulings "available only for goods already imported and are not prospective."  See Am. Air Parcel Forwarding Co. v. United States, 5 CIT 8, 11–12, 557 F. Supp. 605, 608, aff'd, 718 F.2d 1546 (Fed. Cir. 1983), cert. denied, 466 U.S. 937 (1984).  Nor is the decision a general interpretive ruling because it "speak[s] to specific contemplated import transactions which contain identifiable merchandise and which will feel the impact of the ruling with virtual certainty."  Pagoda Trading Co. v. United States, 6 CIT 296, 298, 577 F. Supp. 22, 24 (1983).  In the decision at issue, Customs notified the public that it "granted 'Lever-Rule' protection for battery products bearing the 'DURACELL' mark, U.S. Trademark Registration No. 3,144,722/CBP Recordation No. TMK 16-01135."  See U.S. Customs and Border Protection Grant of "Lever-Rule" Protection, 51 Cust. Bull. & Dec. No. 12 at 1 (Mar. 22, 2017).  The decision identifies the merchandise with specificity and unequivocally directs Customs to restrict the importation of such merchandise, unless certain labeling requirements have been satisfied.  See id.

Opinion and Order Denying Gov't's Mot. Dismiss at *14.  This court concluded previously that

Customs' decision to grant Duracell's application for Lever-Rule protection is a ruling

reviewable under § 1581(h).  This court explained that its conclusion was supported in part by

Customs' regulatory definition of a ruling found in Part 177 of its regulations:

> Customs has defined a ruling as "a written statement issued by the Headquarters Office or the appropriate office of Customs as provided in this part that interprets and applies the provisions of the Customs and related laws to a specific set of facts."  19 C.F.R. § 177.1(d)(1).  The definition provides that a ruling can either be "issued in response to a written request therefor . . . set forth in a letter addressed to the person making the request," or "published in the Customs Bulletin."  19 C.F.R. § 177.1(d)(1).  The decision at issue in this case was (1) a written statement, (2) issued by the Headquarters Office, (3) published in the Customs Bulletin, and (4) interpreted 19 C.F.R. § 133.23(a)(3) as authorizing import restrictions on gray market OEM bulk packaged batteries bearing the "DURACELL" trademark.  The court finds that Customs' decision falls squarely within the regulatory definition of a ruling and constitutes the type of ruling within the scope of review under 28 U.S.C. § 1581(h).

Id. at *14–15.

Duracell takes issue with the court's reliance on Customs' regulatory definition of a

ruling in concluding that the Lever-Rule grant is a ruling reviewable under § 1581(h).

<u>See</u> Duracell Mot. Dismiss 7–11.  Duracell argues that the Lever-Rule grant is a decision under

Part 133, which is distinguishable and excluded from the rulings described in Part 177.  <u>See id.</u>

The court finds Duracell's argument to be without merit.  The court did not conclude that the

Lever-Rule grant is a ruling within the scope of review under § 1581(h) based on the regulatory

definition of a ruling in Part 177 of Customs' regulations.  Rather, this court's conclusion was

based on the legislative history of the jurisdictional statute, which offered insight into the types

of rulings that are reviewable under § 1581(h).  The court found merely that Customs' regulatory

definition of a ruling under Part 177 offered additional support for the court's conclusion.

Further, even assuming, *arguendo*, that there is a direct correlation between rulings

reviewable under § 1581(h) and rulings described in Part 177 of Customs' regulations,

Duracell's argument is predicated on an erroneous reading of the regulations.  The scope

provision under Part 177 reads as follows:

> **This part relates to the issuance of rulings to importers and other interested parties by the CBP**, other than advance rulings under Article 509 of the North American Free Trade Agreement (see subpart I of part 181 of this chapter).  It describes the situations in which a ruling may be requested, the procedures to be followed in requesting a ruling, the conditions under which a ruling will be issued, the effect of a ruling when it is issued, and the publication of rulings in the Customs Bulletin.  The rulings issued under the provisions of this part will usually be prospective in application and, consequently, will usually not relate to specific matters or situations presently or previously under consideration by any CBP field office.  Accordingly, **the rulings requested under the provisions of this part should be distinguished from the administrative rulings, determinations, or decisions which may be requested under procedures set forth elsewhere in this chapter, including, but not limited to, those set forth in** Part 12 (relating to submissions of proof of admissibility of articles detained under section 307 of the Tariff Act of 1930 (19 U.S.C. 1307)), Part 103 (relating to disclosure of information in Customs files), **Part 133 (relating to disputed claims of piratical copying of copyrighted matter)**, Subpart C of Part 152 (relating to determinations concerning the dutiable value of merchandise by Customs field officers, Part 153 (relating to enforcement of the Antidumping Act, 1921, as

amended), Part 159 (insofar as it relates to countervailing duties), Part 171
(relating to fines, penalties, and forfeitures), Part 172 (relating to liquidated
damages), Part 174 (relating to protests), and Part 175 (relating to petitions filed
by American manufacturers, producers, or wholesalers pursuant to section 516 of
the Tariff Act of 1930, as amended).  Nor do the provisions of Part 177 apply to
requests for decisions of an operational, administrative, or investigative nature
which are properly within the cognizance of a CBP Headquarters Office other
than Regulations and Rulings, Office of International Trade.

19 C.F.R. § 177.0 (emphasis added).  Duracell contends that, according to the language of the

scope provision under Part 177, Lever-Rule decisions under Part 133 are distinguishable and

specifically excluded from the rulings described in Part 177.  See Duracell Mot. Dismiss 8–9.

Part 133 of Customs' regulations contains provisions relating to trademarks, trade names, and

copyrights.  The scope provision provides that the rulings under Part 177 should be

distinguishable from those rulings, determinations, or decisions in Part 133 "relating to disputed

claims of piratical copying of copyrighted matter."  Notably absent is any reference to the

regulatory provisions under Part 133 relating to trademarks and trade names.  The logical

inference is that Customs did not intend to exclude rulings, determinations, or decisions relating

to trademarks, including Lever-Rule decisions, from the scope of the rulings described in Part

177.

Despite Duracell's arguments to the contrary, the court continues to find that Customs'

decision to grant Duracell's application for Lever-Rule protection is a ruling within the scope of

review under § 1581(h).

### 2. Irreparable Harm

Duracell argues that Plaintiff has failed to plead irreparable harm adequately in the

amended complaint and that the alleged irreparable harm was not caused by Customs' decision

to grant Duracell's application for Lever-Rule protection.  See Duracell Mot. Dismiss 11–13.

Duracell has presented arguments regarding irreparable harm that challenge both the sufficiency

of the pleadings (a "facial" challenge) and the factual basis for the court's jurisdiction (a

"factual" challenge).[9]  The court addresses each of Duracell's challenges in turn.

i.  Duracell's Facial Challenge

Duracell asserts that the unsupported allegations and legal conclusions regarding

irreparable harm in Plaintiff's amended complaint do not satisfy a plaintiff's obligation to plead

the court's jurisdiction affirmatively.  See id. at 11–12.  The Rules of the Court provide that a

pleading must contain "a short and plain statement of the grounds for the court's jurisdiction

. . . ."[10]  USCIT R. 8(a)(1).  The pleading must "allege sufficient facts to establish the court's

---

[9] When deciding a motion to dismiss pursuant to USCIT Rule 12(b)(1), the court's analysis depends on whether the motion "challenges the sufficiency of the pleadings or controverts the factual allegations made in the pleadings." H&H Wholesale Servs., Inc. v. United States, 30 CIT 689, 691, 437 F. Supp. 2d 1335, 1339 (2006).  If the motion challenges jurisdiction based on the sufficiency of the pleadings, the pleadings are accepted as true and construed in a light most favorable to the non-moving party.  See Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993), cert. denied, 512 U.S. 1235 (1994).  If the motion denies or controverts jurisdictional allegations, "the allegations in the complaint are not controlling" and "only uncontroverted factual allegations are accepted as true." Id. at 1583.  The former is a "facial" attack on the pleading and the latter is a "factual" attack on the existence of jurisdiction.  See id. The distinction is significant because the court may consider evidence outside the pleadings only on a motion that challenges the factual basis for the court's jurisdiction.  See id. at 1584 ("In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.").

[10] In arguing that Plaintiff has failed to plead the court's jurisdiction, Duracell relies on the pleading requirement under USCIT Rule 8(a)(2) and cites to two Supreme Court cases interpreting that pleading requirement.  Duracell Mot. Dismiss 11–12 (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).  The court notes, however, that USCIT Rule 8(a)(2) concerns the pleading requirements for claims.  The court addresses Duracell's argument based on the pleading requirement for jurisdiction, which is found in USCIT Rule 8(a)(1).

jurisdiction."  See DaimlerChrysler Corp., 442 F.3d at 1318 (citing McNutt, 298 U.S. at 189 and

KVOS, Inc., 299 U.S. at 277–78).  To state the basis for the court's jurisdiction, Plaintiff alleges

the following:

> This action is commenced to review a CBP ruling, relating to restricted
> merchandise which, absent judicial review prior to importation of such
> merchandise, would irreparably harm Plaintiff.  The Court therefore has subject-
> matter jurisdiction pursuant to 28 U.S.C. § 1581(h).

First Amended Compl. ¶ 4.  All four predicates for § 1581(h) jurisdiction are alleged in this

paragraph of the amended complaint.  To provide factual support for its allegation of irreparable

harm, Plaintiff alleges that: (1) it is a company that has been engaged in the business of

importing and distributing gray market batteries bearing the "DURACELL" mark for more than

twenty-seven years, see First Amended Compl. ¶¶ 5, 7, 9; (2) Customs received an application

from Duracell requesting Lever-Rule protection with respect to imports of OEM bulk packaged

batteries and foreign retail packaged batteries that bear the "DURACELL" mark, see id. ¶ 22;

(3) Customs granted Lever-Rule protection for gray market battery products bearing the

"DURACELL" mark in March 2017, see id. ¶ 24; and (4) Customs instructed its offices and

inspectors to enforce the Lever-Rule protection against imports of the gray market batteries

bearing the "DURACELL" mark.  See id. ¶ 31; see also Rote v. Zel Custom Mfg. LLC, 816 F.3d

383, 397 (6th Cir. 2016) (providing that a complaint should be read "holistically" and not limited

to the portion dedicated to alleging jurisdiction), cert. denied, 137 S. Ct. 199 (2016).  Accepting

the factual allegations in the amended complaint as true and construing the allegations in a light

most favorable to the non-movant, it is reasonable to infer that, absent pre-importation judicial

review, Customs' decision to grant Duracell's application for Lever-Rule protection will

irreparably harm Plaintiff's business by restricting its imports of gray market battery products. The court finds that Plaintiff has satisfied the liberal pleading requirements of USCIT Rule 8(a)(1).  See USCIT R. 8(f) (providing that "[p]leadings must be construed so as to do justice").

### ii.  Duracell's Factual Challenge

Duracell asserts that the alleged irreparable harm claimed by Plaintiff was not caused by Customs' decision to grant Duracell's application for Lever-Rule protection, which calls into question Plaintiff's claim that it would be irreparably harmed by Customs' Lever-Rule grant absent pre-importation judicial review.  See Duracell Mot. Dismiss 12–13.  The court addressed this issue in its previous opinion in determining that jurisdiction under § 1581(h) is proper.  After considering the evidence pertaining to the issue of irreparable harm, including information gathered from briefs submitted by Plaintiff and the Government as well as two hearings, this court concluded that Plaintiff will suffer irreparable harm if it is unable to obtain pre-importation judicial review and provided the following explanation for its conclusion:

> Through an affidavit from the president of XYZ Corporation, witness testimony that was subject to cross-examination during the hearing held on June 14, 2017, and an exhibit indicating that Plaintiff's shipments of batteries have been held by Customs, Plaintiff has established that it would suffer irreparable harm without pre-importation judicial review of Customs' grant of Lever-Rule protection.  Plaintiff has shown that as a result of the Lever-Rule ruling at issue, Plaintiff has lost approximately six customers (approximately 40% of its total customers), has lost revenue, has had several contracts cancelled, has suffered injury to his business reputation, has suffered injury to his goodwill with long-standing customers, and has lost the confidence of his customers.  Plaintiff's customers canceled their orders and were reluctant to make any future purchases from Plaintiff because of concerns "that the batteries will be seized by [Customs], or that they will be exposed to suit and harassed by the [trademark owner]." Witness testimony indicated that, without judicial review at this juncture, Plaintiff would lose additional business opportunities, suffer harm to his goodwill and reputation, and be unable to continue business operations.
>
> …

> The harms alleged by Plaintiff include significant non-monetary injuries to goodwill, reputation, and customer confidence that occurred prior to importation in anticipation of Customs' application of the Lever-Rule for Duracell batteries. Plaintiff's entries may also be subject to seizure and forfeiture, absent the ability to comply with any labeling requirements imposed by Customs.  If Plaintiff is unable to obtain judicial review before importation of the goods, Plaintiff will experience harm that cannot be remedied by monetary relief.  Therefore, Plaintiff will suffer irreparable harm if it is unable to obtain judicial review prior to the importation of the merchandise.

Opinion and Order Denying Gov't's Mot. Dismiss at *16–19 (internal citations and footnotes omitted); see also Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012) (explaining that harm such as "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.").  Duracell argues that any alleged irreparable harm to Plaintiff was not caused by Customs' Lever-Rule grant, but rather by Duracell's efforts to protect its trademark rights against some of Plaintiff's customers through litigation. See Duracell Mot. Dismiss 12–13.  The court finds that Duracell's argument as to the source of the irreparable harm is purely speculative and fails to rebut the evidence presented by Plaintiff in this action showing that Customs' Lever-Rule grant will cause Plaintiff irreparable harm if it is unable to obtain pre-importation judicial review.  Further, Duracell's argument fails to account for Plaintiff's loss of business from its other customers.  Thus, the court continues to find that Plaintiff has satisfied the irreparable harm requirement for § 1581(h) jurisdiction.

### 3. Prudential Standing

Duracell argues that Plaintiff does not have prudential standing[11] in this action because it is not within the zone of interests protected by the Lever-Rule regulations.  See Duracell Mot. Dismiss 14–16.

The prudential limitations on the court's jurisdiction are "judicially self-imposed limits on the exercise of federal jurisdiction."  Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).  Plaintiff's cause of action arises out of the APA and challenges the validity of Customs' decision to grant Duracell's application for Lever-Rule protection, thereby restricting imports of gray market battery products bearing the "DURACELL" mark.  See First Amended Compl. ¶¶ 32–59.  The APA gives standing to any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  For a plaintiff to have prudential standing to bring a cause of action under the APA, the court must determine "'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute

---

[11] Standing poses both constitutional and prudential limitations on this court's jurisdiction.  See Bennett v. Spears, 520 U.S. 154, 162 (1997) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  The constitutional limitations on the court's jurisdiction are derived from the case or controversy requirement of Article III.  See Liner v. Jafco, Inc., 375 U.S. 301, 306 (1964); 3V, Inc. v. United States, 23 CIT 1047, 1049, 83 F. Supp. 2d 1351, 1352–53 (1999).  "Article III standing requires plaintiffs to demonstrate: (1) that they have suffered some injury-in-fact; (2) a causal connection between the defendant's conduct and this injury-in-fact; and (3) that this injury is redressable by the court."  Canadian Lumber Trade Alliance v. United States, 30 CIT __, __, 425 F. Supp. 2d 1321, 1335 (2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  The court previously addressed the constitutional limitations on the court's jurisdiction and determined that this action presents a case or controversy because Plaintiff satisfies the standing requirements of Article III of the U.S. Constitution.  See Opinion and Order Denying Gov't's Mot. Dismiss at *20–21.  Duracell's standing argument focuses on prudential limitations on the court's jurisdiction.  See Duracell Mot. Dismiss 14–16.

. . . in question.'" Gilda Inds., Inc. v. United States, 446 F.3d 1271, 1279–80 (Fed. Cir. 2006);

see also Bennett, 520 U.S. at 162 (citing Allen, 468 U.S. at 751 and Valley Forge Christian

College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474–75

(1982)).  This requirement is "'not meant to be especially demanding.'"[12]  Match-E-Be-Nash-

She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 225 (2012) (quoting Clarke v.

Sec. Indus. Ass'n, 479 U.S. 388, 399 (1987)).

    The statute in question here is 19 U.S.C. § 1526, which is the statutory authority for 19

C.F.R. § 133.23 and the Lever-Rule protections against imports of restricted gray market goods.

See Animal Legal Def. Fund v. Quigg, 932 F.2d 920, 937–38 (Fed. Cir. 1991) (discussing the

meaning of "relevant statute" under § 702 of the APA for purposes of prudential standing).

These laws protect United States trademark owners from the importation of gray market goods

that are materially and physically different from those goods that are authorized by the trademark

owner to be sold and imported in the United States.  Conversely, any protection afforded to

trademark owners under these laws regulate importers of gray market merchandise.  As an

importer of gray market batteries bearing Duracell's trademark, Plaintiff arguably falls within the

zone of interests regulated by 19 U.S.C. § 1526.  The court cannot say that Plaintiff's "'interests

are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot

reasonably be assumed that Congress intended to permit the suit.'"  Match-E-Be-Nash-She-Wish

---

[12] The court notes that the Supreme Court has called into question the strict application of the prudential standing doctrine, stating that a court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates."  Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1387–88 (2014).

Band of Pottawatomi Indians, 567 U.S. at 225 (quoting Clarke, 479 U.S. at 399). Therefore,

Plaintiff has prudential standing to bring this action.

    *4.  Exhaustion*

    Duracell argues that the court is without jurisdiction because Plaintiff has failed to

exhaust administrative remedies before filing this action.[13]  See Duracell Mot. Dismiss 28–31.

Although the court ordinarily requires the exhaustion of administrative remedies,[14] litigants are

statutorily permitted to bring an action pursuant to 28 U.S.C. § 1581(h) in this court "prior to the

exhaustion of administrative remedies if the person commencing the action makes the

demonstration required by such section."  28 U.S.C. § 2637(c).  Congress has afforded litigants

the ability to obtain judicial review prior to the importation of merchandise in exceptional

---

[13] Duracell asserts that, prior to bringing this action, Plaintiff was required to exhaust the remedy available under 19 U.S.C. § 1625(b).  See Duracell Mot. Dismiss 28–31.  That statute provides that "[a] person may appeal an adverse interpretive ruling and any interpretation of any regulation prescribed to implement such ruling to a higher level of authority within Customs for de novo review," and "any such appeal shall be considered and decided no later than 60 days following the date on which the appeal is filed."  19 U.S.C. § 1625(b).  Duracell claims that Plaintiff's April 10, 2017 letter requesting reconsideration of the Lever-Rule grant was an appeal of an adverse interpretive ruling, but Plaintiff commenced this action before the expiration of the 60-day time period given to the agency to make a decision on such an appeal.  The court notes that the Government does not believe that the remedy provided under 19 U.S.C. § 1625(b) applies in this case.  See Gov't's Resp. 4–5.

[14] The court "shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  The exhaustion requirement is based on the principle "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  Consol. Bearings Co. v. United States, 348 F.3d 997, 1003 (Fed. Cir. 2003).  The overall purpose of the exhaustion doctrine is to "allow the agency to apply its expertise, rectify administrative mistakes, and compile a record adequate for judicial review–advancing the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  Carpenter Tech. Corp. v. United States, 30 CIT 1373, 1374–75, 452 F. Supp. 2d 1344, 1346 (2006) (citing Woodford v. Ngo, 548 U.S. 81, 88–90 (2006)).  Put simply, the exhaustion doctrine requires a litigant to avail itself of all available remedies at the administrative level as a precondition to judicial review.

circumstances "if the party commencing the action can demonstrate that he would be irreparably

harmed if forced to exhaust his administrative remedies in following the traditional route prior to

judicially challenging the Secretary's ruling or lack thereof." H.R. Rep. 96-1235, at 52 (1980),

reprinted in 1980 U.S.C.C.A.N. at 3769. As discussed in this opinion and in the court's previous

opinion, Plaintiff has satisfied the four preconditions for jurisdiction under § 1581(h), including

irreparable harm. Requiring the exhaustion of administrative remedies prior to bringing such an

action "would frustrate the purpose of [§ 1581(h)], which was enacted to provide importers with

a means for obtaining pre-importation relief without having to" endure post-importation

consequences. Heartland By-Prods., Inc. v. United States, 424 F.3d 1244, 1252 (Fed. Cir. 2005).

The court declines, therefore, to require Plaintiff to exhaust its administrative remedies, if any,

before bringing this action. To impose such a requirement would render § 1581(h) meaningless

and would be inconsistent with the intent of Congress.

### B.  Motion to Dismiss for Failure to State a Claim Pursuant to USCIT Rule 12(b)(6)

Duracell moves to dismiss Plaintiff's amended complaint for failure to state a claim upon

which relief may be granted pursuant to USCIT Rule 12(b)(6). See Duracell Mot. Dismiss 16–

28. Pleadings before the court are governed by Rule 8(a) of the Rules of the Court, which

provides that "[a] pleading that states a claim for relief must contain . . . a short and plain

statement of the claim showing that the pleader is entitled to relief . . . ." USCIT Rule 8(a)(2).

When deciding a motion to dismiss for failure to state a claim, the court accepts the well-pleaded

factual allegations in the complaint as true and draws all reasonable inferences from those factual

allegations in favor of the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Amoco Oil

Co. v. United States, 234 F.3d 1374, 1376 (Fed. Cir. 2000). The pleading requirement under

USCIT Rule 8(a)(2) is satisfied if the complaint "state[s] a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  Dismissal under USCIT Rule 12(b)(6) is appropriate "only when it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief.'"  Ponder v. United States, 117 F.3d 549, 552 (Fed. Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957) and citing Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997)).

Plaintiff's cause of action rests solely on APA challenges to Customs' decision to grant Duracell's application for Lever-Rule protection.  See First Amended Compl. ¶¶ 32–59.  Thus, to survive a motion to dismiss pursuant to USCIT Rule 12(b)(6), Plaintiff's amended complaint must contain a short and plain statement (1) identifying the final agency action, (2) showing that there is no other adequate remedy in a court, and (3) showing that it is plausible that Plaintiff is entitled to the relief sought for each of its claims.[15]  See Twombly, 550 U.S. at 570; Perry Capital LLC v. Mnuchin, __ F.3d __, __–__, Appeal Nos. 14-5243–54, 14-5260, 14-5262, at *48–50 (D.C. Cir. July 17, 2017); Cohen v. United States, 650 F.3d 717, 731 (D.C. Cir. 2011); Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 452 F.3d 798, 805–06 (D.C. Cir. 2006); Shinyei Corp. of Am., 355 F.3d at 1305–12.

---

[15] Under the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review."  5 U.S.C. § 704.

The agency action[16] challenged here is Customs' decision to grant Duracell's application

for Lever-Rule protection against imports of certain gray market battery products bearing the

Duracell trademark.  See First Amended Compl. ¶ 8.  Agency action is final if the act "mark[s]

the 'consummation' of the agency's decisionmaking process" and "the action must be one by

which rights or obligations have been determined, or from which legal consequences will flow."

United States Army Corps of Engineers v. Hawkes Co., Inc., 136 S. Ct. 1807, 1813 (2016)

(quoting Bennett, 520 U.S. at 177–78).  This court previously addressed this issue and concluded

that the Lever-Rule grant was final agency action:

> Customs issued a notice on January 25, 2017 that it received an application from
> Duracell U.S. for Lever-Rule protection for gray market batteries bearing the
> "DURACELL" trademark.  Customs published a second notice on March 22,
> 2017 announcing that it granted Duracell U.S.'s application for Lever-Rule
> protection.  Customs' decision was final because it "mark[ed] the 'consummation'
> of the agency's decision making process" and notified the public of the type of
> conduct "from which 'legal consequences will flow.'"  See Bennett v. Spear, 520
> U.S. 154, 177–78 (1997).  Customs' second notice declared definitively that the
> importation of the subject gray market batteries is restricted and that its decision
> was not subject to change or any conditions.  Further, Customs' regulations
> provide that Lever-Rule restrictions take effect upon granting an application for
> protection.  See 19 C.F.R. § 133.2(f).

Opinion and Order Denying Gov't's Mot. Dismiss at *22–23.  Congress has not provided

Plaintiff with another adequate remedy in a court to obtain judicial review of Customs' Lever-

Rule grant.  Thus, Plaintiff's amended complaint has identified final agency action for which

---

[16] Agency action is defined in the APA as including "the whole or part of an agency rule, order,
license, sanction, relief, or the equivalent or denial thereof, or failure to act . . . ."  5 U.S.C.
§ 551(13).

there is no other adequate remedy in a court.[17]

The final hurdle for Plaintiff's action to survive Duracell's motion requires the court to determine whether Plaintiff is plausibly entitled to the relief sought for each of the counts in the amended complaint. The first count in Plaintiff's amended complaint claims that Customs' decision to grant Duracell's application for Lever-Rule protection was unlawful and must be set aside because Customs failed to follow notice and comment rulemaking requirements of the APA. See First Amended Compl. ¶¶ 32–47. Plaintiff alleges that Customs' decision to grant Lever-Rule protection against imports of gray market battery products bearing the Duracell trademark constituted the type of rulemaking that required Customs to follow notice and comment procedures.[18] See First Amended Compl. ¶¶ 32–47. Plaintiff requests the court to declare unlawful and set aside the Lever-Rule grant for failure to follow notice and comment procedures. It is not apparent that Customs followed notice and comment procedures before issuing the Lever-Rule grant. If the court determines that the Lever-Rule grant was subject to

---

[17] Duracell argues that Customs' Lever-Rule grant was not final agency action because Customs has not issued a written response to Plaintiff's letter requesting for reconsideration. See Duracell Mot. Dismiss 28–31. As explained above, supra Discussion Section A.4., Plaintiff was not required to exhaust its administrative remedies, if any, before bringing this action pursuant to 28 U.S.C. § 1581(h).

[18] Generally, agencies are free to develop policy through either rulemaking or adjudication. See SEC v. Chenery, 332 U.S. 194, 202 (1947); see also Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 524–25 (1978) (providing that a court will not impose more procedures than those imposed by Congress or the agency). According to the APA, an agency is required to notify the public of proposed rulemaking and provide the public with an opportunity to comment as part of the process for formulating a rule. See 5 U.S.C. § 553. A rule is defined as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret or prescribe law or policy." 5 U.S.C. § 551(4). The APA's notice and comment requirement applies to legislative rules, but not to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A).

notice and comment rulemaking requirements, then Plaintiff would be entitled to the relief

sought.  See 5 U.S.C. § 553 (requiring agencies to notify the public and provide an opportunity

for comment prior to issuing a rule); 5 U.S.C. § 706(2)(D) (providing that a reviewing court shall

hold unlawful and set aside agency action performed "without observance of procedure required

by law").  Thus, it is plausible that Plaintiff is entitled to the relief sought for the first count in the

amended complaint.[19]

        The second count in the amended complaint alleges that Customs' decision to grant

Duracell's application for Lever-Rule protection was arbitrary, capricious, an abuse of discretion,

and otherwise not in accordance with the law because Duracell has authorized the sale and

importation of the battery products covered by the Lever-Rule grant.  See First Amended Compl.

¶¶ 48–52.  The Lever-Rule regulations authorize the imposition of import restrictions only on

imports of gray market goods bearing a genuine trademark that are physically and materially

different from the goods authorized by the United States trademark owner for importation or sale

in the United States.  See 19 C.F.R. § 133.23(a)(3) (describing the goods subject to Lever-Rule

protections).  Plaintiff claims that the Lever-Rule grant imposes restrictions on goods that are not

physically and materially different from the goods authorized by Duracell for importation or sale

in the United States.  Customs is not authorized to restrict imports of gray market goods if they

do not possess such physical and material differences.  Assuming that Duracell has authorized

---

[19] Duracell argues that Plaintiff has failed to state a claim because the Lever-Rule grant was not
subject to notice and comment requirements, but this argument would require addressing the
merits of the case.  See Duracell Mot. Dismiss 16–19.  Duracell's arguments regarding the merits
of the case have no bearing on whether Plaintiff has adequately stated its claims in this action as
required by USCIT Rule 8(a).  Therefore, the court declines to address Duracell's argument on
the merits at this stage of the proceeding.

the importation and sale of the merchandise covered by the Lever-Rule grant, Plaintiff has stated

a plausible claim for relief.  See 5 U.S.C. § 706(2)(A) (providing that a reviewing court shall

hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law"); see also Iqbal, 556 U.S. at 678; Amoco Oil

Co., 234 F.3d at 1376.

        The third count in the amended complaint alleges that Customs' decision to grant

Duracell's application for Lever-Rule protection was arbitrary and capricious because Customs'

description of the gray market battery products subject to import restrictions was impermissibly

vague.  See First Amended Compl. ¶¶ 53–59.  A law that purports to define the lawfulness or

unlawfulness of conduct "'is void for vagueness if its *prohibitions* are not clearly defined.'"

Nyeholt v. Sec'y of Veterans Affairs, 298 F.3d 1350, 1356 (Fed. Cir. 2002) (quoting Grayned v.

City of Rockford, 408 U.S. 104, 108 (1972)).  The void-for-vagueness doctrine explains that a

law that regulates conduct is arbitrary if it does not provide the public with "a reasonable

opportunity to know what is prohibited" and "provide explicit standards for those who apply

them."  Grayned, 408 U.S. at 108–09.  Duracell's application sought Lever-Rule protection

"against importations of OEM bulk packaged batteries and foreign retail packaged batteries,

intended for sale in countries outside the United States that bear the 'DURACELL' mark."  U.S.

Customs and Border Protection Receipt of Application for "Lever-Rule" Protection, 51 Cust.

Bull. & Dec. No. 4 (Jan. 25, 2017).  Customs granted the application and explained that the

subject "gray market Duracell battery products differ physically and materially from the Duracell

battery products authorized for sale in the United States with respect to the following product

characteristics: label warnings, consumer assistance information, product guarantees, and

warranty coverage." U.S. Customs and Border Protection Grant of "Lever-Rule" Protection, 51

Cust. Bull. & Dec. No. 12 (Mar. 22, 2017). Plaintiff claims that the Lever-Rule grant is

impermissibly vague because "it does not describe the goods covered, nor the physical or

material differences in sufficient detail to permit compliance by affected persons." First

Amended Compl. ¶ 58. The court can hold unlawful and set aside the Lever-Rule grant if it

determines that the grant fails to provide the public adequate notice of what conduct is restricted.

See 5 U.S.C. § 706(2)(A) (providing that a reviewing court shall hold unlawful and set aside

agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law"). Plaintiff has shown that it is plausibly entitled to relief and has satisfied

the liberal pleading requirements for each count in the amended complaint.

Duracell argues that Plaintiff's claim that Customs failed to observe notice and comment

rulemaking requirements is barred by the statute of limitations for APA challenges because

Plaintiff's action is actually a challenge to the Lever-Rule regulations promulgated in 1999. See

Duracell Mot. Dismiss 20–22. A civil action against the United States seeking judicial review of

agency action under the APA must be brought "within six years after the right of action first

accrues." 28 U.S.C. § 2401. Actions brought pursuant to 28 U.S.C. § 1581(h) in this court are

subject to a two-year statute of limitations. See 28 U.S.C. § 2636(i). Duracell's argument that

Plaintiff's action is time barred by the statute of limitations fails even assuming, *arguendo*, that

the shorter two-year statute of limitations applies here. Generally, "a statute of limitations begins

to run . . . when the cause of action 'accrues'—that is, when 'the plaintiff can file suit and obtain

relief.'" Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604, 610 (2013) (quoting

Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192,

201 (1997) (internal quotations omitted).  In the context of judicial review of agency action, "the

cause of action accrues when all statutorily required or permitted agency review has been

exhausted."  Impro Prods., Inc. v. Block, 722 F.2d 845, 850–51 (D.C. Cir. 1983).  As explained

above, Plaintiff was not required to exhaust administrative remedies prior to obtaining judicial

review of Customs' decision to grant Duracell's application for Lever-Rule protection.  See 28

U.S.C. § 1581(h); H.R. Rep. 96-1235, at 52 (1980), reprinted in 1980 U.S.C.C.A.N. at 3769; see

also Heartland By-Prods., Inc., 424 F.3d at 1252.  Where there is no prescribed administrative

remedy, the cause of action for an APA challenge accrues when the challenged final agency

action occurred, see Impro Prods., Inc. v. Block, 722 F.2d 845, 850–51 (D.C. Cir. 1983)

(concluding that a cause of action accrues when the agency action occurred where no

administrative review procedures exist), and the party has suffered a legal wrong, adversely

affected, or aggrieved by the final agency action.  See Herr v. U.S. Forest Serv., 803 F.3d 809,

819–20 (6th Cir. 2015) (clarifying that a cause of action under the APA accrues when there is

final agency action and injury-in-fact).  Duracell's argument that Plaintiff's action is barred by

the statute of limitations is predicated on the notion that Plaintiff's action is a facial challenge to

the Lever-Rule application and decision process promulgated by Customs in 1999.  See Duracell

Mot. Dismiss 20–22; see also Gray Market Imports and Other Trademarked Goods, 64 Fed. Reg.

9,058 (Dep't Treasury Feb. 24, 1999) (final rule).  Duracell mischaracterizes the nature of

Plaintiff's action.  Plaintiff does not seek to invalidate the 1999 Lever-Rule regulation, but rather

the specific Lever-Rule grant issued by Customs in 2017 that restricted the importation of gray

market battery products bearing the "DURACELL" mark.  The Lever-Rule grant is the final

agency action challenged in this case.  Plaintiff's action is neither barred by the six-year nor the

two-year statute of limitations because the Lever-Rule grant was issued in March 2017.

**CONCLUSION**

Therefore, upon consideration of Defendant-Intervenor Duracell U.S. Operations, Inc.'s

Motion to Dismiss, and all other papers and proceedings in this action, it is hereby

**ORDERED** that Duracell's motion is denied; and it is further

**ORDERED** that this action shall proceed according to the Scheduling Order issued on

August 3, 2017, ECF No. 90.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:  September 15, 2017
New York, New York